[No. 21197.   Department Two.   June 20, 1928.]

P. C. WAGER, *Appellant*, v. PETER ODDEN *et al.,*
*Respondents.*[1]

[1] ARBITRATION AND AWARD (2)—AGREEMENT—ORAL MODIFICATION.
Where a written logging contract provided for the arbitration
of all disputes, an oral modification as to the manner of pay-
ments does not nullify the arbitration clause.

[2] ARBITRATION AND AWARD (3)—AGREEMENT TO ARBITRATE—CONDI-
TION PRECEDENT TO ACTION.   The arbitration of all disputes pro-
vided for in a written logging contract is a condition precedent
to an action, and covers a dispute where non-liability is asserted
on the ground that no profits were made under the contract.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered December 24, 1927,
dismissing an action on an arbitration agreement,
upon a challenge to the sufficiency of the complaint.
Affirmed.

*Martin J. Lund* and *John G. Lund,* for appellant.

*C. A. Holtz (Robert D. Hamlin,* of counsel), for
respondents.

ASKREN, J.—The plaintiff in this action filed an
amended complaint alleging that, in 1919, as the owner
of a contract with the Federal government for the
removal of timber on the Port Madison Indian Reser-
vation, he entered into a contract with one Jacob
Shold and the defendant Peter Odden for the logging
thereof.   The contract was also signed by Wager's
partner, G. E. Tilton, with whom he was associated
under the name of the Suquamish Logging Company.
Early in 1920, Shold's interest in, and liability under,
the contract was taken over by the defendant Emil
Myreboe.   In the latter part of 1920, because of finan-

.¹Reported in 268 Pac. 151.

cial embarrassment, Tilton assigned his interest to Wager, leaving as parties to the contract Wager on one side and Peter Odden and Emil Myreboe on the other. An oral modification of the original contract for the logging was then entered into, whereby Wager assigned his government contract to H. S. Myreboe, father of one of the defendants, and it was agreed that he should, as agent for the defendants, sell the timber, and then pay the bills and pay the balance remaining to Wager. He alleged a performance of the agreement after its' oral modification, but claimed a failure to pay over the sums due to plaintiff.

To this complaint certain affirmative defenses were urged, including a failure upon the part of the plaintiff to tender arbitration, as provided in the contract, and that the contract had been unprofitable.

When the cause came on for hearing, the defendants, after the opening statement of plaintiff's counsel, challenged the sufficiency of the complaint. After much argument between counsel for plaintiff and the court, a judgment was entered dismissing the action on the ground that no arbitration had been tendered. This appeal followed.

It is urged by appellant that this action is not brought to recover for a breach of any condition of the written contract, but for a breach of a subsequent oral agreement to pay a sum of money. To determine appellant's exact position as presented to the trial court, the following colloquy is illuminating:

"THE COURT: But take the second affirmative defense. It pleads that the contract provides for arbitration. Now, let us see how you deny that, if you deny it at all. They plead, you know, that it provides for arbitration and your complaint does not show that you offered it or tendered it. You say this action is not brought on a breach of a condition contained in a written contract but upon a breach by defendants of

a subsequent oral agreement. All right. Let us see where it is going to place you. You concede that the written contract is a contract except as to one modification as to payments. Now, then, it has not been modified except in that one particular as to payments. It has not been modified otherwise. Our Supreme Court in the 81st Washington at page 595, says, 'We have held in a long line of cases that where parties entering into a contract, and provide therein that all differences between them that may thereafter arise out of the contract shall be submitted to a Board of Arbitrators whose decision therein shall be conclusive and final upon the parties, no action can be maintained on the original contract by either party until he has tendered arbitration of the differences to the other party, and such other party has refused the tender.'

"Now, you do not deny their charges that there has been no tender of arbitration. You simply say you do not have to now. We are working under a written agreement—a written contract. . . . .

"THE COURT: I want that arbitration feature.

"MR. LUND: I will read to your Honor from the 10th Washington at page 525. Now, your Honor, will remember that there was no mention of arbitration in this oral agreement and it is a breach of the oral agreement that we are suing upon. There was no mention of any arbitration in that agreement.

"THE COURT: Well, what part of that written agreement is in force? Is any part of the written agreement in force then?

"MR. LUND: The part that we are concerned about is the failure to pay the money as they agreed to in that agreement.

"THE COURT: Well, what part of the written agreement is in force?

"MR. LUND: The whole written agreement is in force—the whole written agreement is in force.

"THE COURT: You are bound—do I understand you to concede that you are bound by the terms of that written agreement with the exception as to the manner of payment?

"MR. LUND: That is all. . . .

"The Court:   .   .   .   But here, gentlemen, is the most serious point in the whole case. I'm going to read this language of the contract again. Now, it is here conceded by Mr. Lund, and I think rightly, that the contract in this case consists of the writing, Exhibit A, with the modification by oral agreement; that the oral agreement modifies it in one particular only and that in all other particulars the language written is a part of the contract. You can call the language and the oral modification, if you want to, an oral contract. That provides in case of any disagreement the first party shall select one arbitrator and the second party shall select one arbitrator who shall confer in an effort to reach an agreement between themselves, regarding the matter in dispute, in which their agreement shall be binding upon both parties to this contract.

"In case said two arbitrators are not able to reach an agreement between themselves they shall select a third arbitrator and any agreement between two of said three arbitrators shall be binding upon both parties to this contract.   .   .   ."

[1] It will thus be seen that the issue which the trial court was called upon to decide was this: Where the written agreement was completely in force between the parties, was the modification with reference to the sale and disposition of logs arising by reason of operations under the written contract such a modification thereof or departure therefrom as to nullify the contract of arbitration?

In support of his contention that the arbitration provision was thereby set at naught, appellant has laid stress upon some of our former decisions, notably, *Van Horne v. Watrous,* 10 Wash. 525, 39 Pac. 136; *Sweatt v. Bonne,* 60 Wash. 18, 110 Pac. 617; *Russell & Gallagher v. Yesler Estate,* 89 Wash. 260, 154 Pac. 188.

In the first cited case, *Van Horne v. Watrous, supra,* the decision was based upon a construction of the

written contract, and it was held that the words used indicated that only certain matters were to be submitted to arbitration, and that therefore the court would not construe the arbitration clause to include matters where it was not clear that the parties intended to have them covered by the arbitration feature.

In *Sweatt v. Bonne, supra,* the parties had contracted for the erection of a two-story building without cellar or basement at a cost of approximately $10,000. The contract provided for the architect's decision as to the work. Later, a second written contract was entered into between the same parties calling for the construction of a basement at a cost of $1,600. Still later, an oral contract was entered into for an additional story on the building at a cost of $3,750. Certain additional extras were also later added.

Neither the oral agreement for the extra story nor the written agreement for the basement provided for the architect's approval. The architect declined to approve the building and issue a final certificate, and suit was brought. We held that

"This was not the building contemplated in the original contract and the architect was not by agreement of the parties made the final judge of its completion. Both of the later contracts which resulted in the building being so changed as to become a substantially different building are silent upon that subject."

Again, in the last cited case, *Russell & Gallagher v. Yesler Estate, supra,* in refusing to hold the architect as the arbitrator of certain claims between the parties, we held that the language of the contract did not make it "at all certain that the parties to this contract agreed to make the architect the final arbitrator of *any* of the questions involved."

These cases are not helpful in determining the present controversy. The first case alone presents events subsequent to the original contract and there the changes were very marked and substantial. In the present case, the written contract is the real thing in controversy.

The parties made no new contract at all. They merely modified the old in certain particulars. Appellant recognized that his rights were governed, in the main, by the written contract, and not only set it out in his complaint, but notified the court that "the whole written agreement is in force—the whole written agreement is in force;" and that he was bound by all its terms except as to "manner of payment."

It may not be amiss to say, at this juncture, that the selection of H. S. Myreboe as agent of the respondents did not introduce any third party to the contract. Acting as the agent of the respondents, his acts were theirs. So when appellant allowed respondents, through their agent, to perform certain acts which appellant had theretofore performed, he was not modifying the agreement in such a way as to make a party to the dealings some one whom the appellant might not wish to arbitrate with. The modification still left the same parties, the same objects, the same contract with the change only as to payments.

[2] With this view of the issues it is hardly necessary to cite our holdings that, where parties enter into a contract and clearly provide therein that all differences between them shall be submitted to arbitration, the provision is binding. See *Herring-Hall-Marvin Safe Co. v. Purcell Safe Co.,* 81 Wash. 592, 142 Pac. 1153, and cases there cited.

It also seems to be contended that because the respondents denied liability they should not be permitted

to invoke the arbitration feature of the contract. In support of this contention many cases are cited. We think, however, that appellant has misconceived the rule announced therein. In this case, non-liability is asserted upon the ground that no profits had been made under the contract. This surely left open to arbitration the whole question of the conduct of the business, in which a consideration of all timber cut, moneys received and paid out would be involved.

Other questions raised do not require discussion in this opinion.

Judgment affirmed.

FULLERTON, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.