[No. 23179. Department One. January 26, 1932.]

A. G. BLACK, *Appellant*, v. PHILIP MILLER COMPANY, *Respondent*, THE AETNA CASUALTY AND SURETY COMPANY, *Appellant*.[1]

*J. Speed Smith* and *Henry Elliott, Jr.*, for appellant.
*Alexander Stewart* and *Robert D. Hamlin*, for respondent.

BEELER, J.—We shall refer to the appellant Black as "contractor," to the appellant Aetna Casualty and Surety Company as "surety" and to the respondent, Philip Miller Company, as "owner."

On June 16, 1926, the contractor and the owner entered into a written contract whereby the former, for and in consideration of the sum of $139,000, agreed to furnish all materials and perform all labor neces-

[1]Reported in 7 P. (2d) 33.

sary to make certain alterations and build or construct certain additions to the Elman hotel and Pilcher building for the owner at Wenatchee, Washington, in accordance with certain specifications and drawings. The surety gave its indemnity bond for a like amount indemnifying the owner against loss in the event the contractor failed to perform. The contract, in part, provided:

"No alteration shall be made in the work shown or described by the drawings and specifications, except upon a written order of the Architect, and when so made, the value of the work added or omitted shall be computed by the Architect, and the amount so ascertained shall be added to or deducted from the contract price. In the case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference. . . .

"All payments shall be made upon written certificate of the architect to the effect that such payments have become due.

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against said lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default.

"(10) It is further mutually agreed between the parties hereto that no certificate given in payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the

performance of this contract either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials.''

On the same day, the owner and the contractor entered into another agreement called ''general review of alterations and additions of the Elman hotel and Pilcher building,'' which, in part, provided:

''The owner reserves the right to make any alterations in the plans, specifications and construction whether additions or deductions without rendering void the contract and the amount allowed any contractor or credited to the owner shall be based upon the market value of such materials and such labor at the time such alterations, additions or deductions are made.''

Before the hotel was completed, differences arose between the contractor and the owner, and the former stopped work on the hotel. As a result, the architect, on April 7, 1927, in accordance with the terms of the contract, certified that the contractor had failed to complete the building, and that the owner was entitled to take possession and complete it himself.

Between the dates of April 7 and April 16, 1927, the owner and the contractor entered into negotiations with a view of adjusting their differences. On the latter date, they entered into a supplemental written agreement whereby the owner was to furnish all materials, and pay all labor charges each week, the contractor to superintend the construction and to receive ten per cent of the cost of the labor° furnished and the materials used. The work under this arrangement or agreement was to be performed, as formerly, under the direction and with the approval of the architect. This supplemental agreement expressly provided that neither party should be released from the terms or conditions of the original contract. This instrument, in part, provided:

"(2) Subject to the foregoing provisions, the first party as contractor agrees to perform or cause to be performed for the second party as owner all services reasonably necessary to complete the said Elman hotel and Pilcher building, and to expedite the work of such completion as rapidly as reasonably possible. The second party as owner is to furnish and supply all materials of every nature required for use in said completion, except the second party as owner shall have the right to have used in said completion any materials suitable for such purposes now on hand in connection with the work heretofore being done on said building. Such material however to be charged to and paid for by second party as owner, if not heretofore paid for by the owner or not the property of the owner, except as hereinafter stated.

"(3) The actual cost of the material, not including material already on job, so used in said completion shall be paid for by second party as owner.

"(4) The actual cost of labor and material used by first party under this contract shall be paid by second party direct to labor and material men. . . ."

After the parties had operated under the above contract a few weeks, the contractor again abandoned the work, and later the architect computed and certified as to various items of damage, aggregating the sum of $18,151.59, sustained by the owner by reason of the non-completion of the building by the contractor.

On June 22, 1927, the contractor brought this action, alleging that the owner had breached the contract. This the owner denied, and by cross-complaint alleged that the contractor had breached the contract, and sought judgment against him in the sum of $18,151.59. Various lien claimants appeared in the action. The cause came on for trial to the court June, 1928, and extended over a period of several weeks. Later, all questions were extensively argued to the court, and thereafter the trial judge took the cause under advise-

ment, and on January 19, 1929, filed a very comprehensive and thorough written memorandum decision.

On March 13, 1929, judgment was entered against the owner and in favor of the contractor in the sum of $17,409.09, and against the owner and in favor of the various lien claimants, including interest and attorney's fees, in the sum of $17,280.27. The judgment in part provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the defendant the Philip Miller Company, have judgment against the defendant Aetna Casualty and Surety Company, *in such sum as the amount of costs herein adjudged to be paid by the Philip Miller Company in favor of the lien foreclosure judgment creditors shall exceed the sum of $127.82.*" (Italics ours.)

The theory upon which the court entered judgment against the surety is tersely expressed in the brief of counsel for the surety.

"It will be noted that the total net liens, including interest and attorney's fees, allowed by the court against the Philip Miller Company, was $17,280.27, and that the amount of the judgment allowed the plaintiff against the Philip Miller Company, including interest and attorney's fees, was $17,408.09. The difference between these amounts is $127.82 in favor of the plaintiff. The trial court, therefore, adopted the theory that, in determining what judgment should be rendered as to the surety company, he should find against the surety company in such amount as the 'costs herein adjudged to be paid by the Philip Miller Company in favor of the lien foreclosure judgment creditors, shall exceed the sum of $127.82.' "

The amount of the judgment recovered by the lien claimants against the owner was offset against the amount of the judgment recovered by the contractor against the owner, making a difference of $127.82 in favor of the contractor. The record does not disclose whether the total costs incurred in the various actions

brought by the several lien claimants exceed the sum of $127.82. If the costs do not exceed that sum, then the surety will not be called upon to make any payment whatever under the terms of the judgment; but if the costs do exceed that sum, the surety will be required to pay the excess. The surety company complains of that portion of the judgment.

The contractor has filed no brief, nor did he appear at the time of the oral argument. Apparently, he is satisfied with the judgment. The surety, however, contends that the judgment is wrong because it is based upon a wrong theory of the law; that the court improperly allowed certain liens; that the owner breached the contract, or so changed it as to release the surety. The trial court resolved all these contentions against the contractor as well as the surety, and in our opinion rightly so.

From our review of the evidence and the exhibits, we are satisfied that the contractor did not perform the work in accordance with the drawings and specifications, and that the liens that were asserted against the property were occasioned through the failure of the contractor to complete the building. The fact is clearly established that the owner did not breach the contract. As the work on the hotel progressed, the architect, from time to time, would certify to the owner the amount to be paid, and the latter, in turn, would advance the required amount. From June, 1926, to April, 1927, the owner paid to the contractor for labor and materials the sum of $122,463.78.

The contract provided that no alterations should be made except upon the written order of the architect, and if alterations were made, the cost should be computed by the architect and the amount thereof added to or deducted from the contract price; and if either party was dissatisfied with the decision of the

architect, he had the right to submit the matter in dispute to a board of arbitrators, whose decision, under the provisions of the contract, should be final. The contractor at no time submitted any question to arbitration.

" . . . where parties enter into a contract and clearly provide therein that all differences between them .shall be submitted to arbitration, the provision is binding." *Wager v. Odden,* 148 Wash. 188, 268 Pac. 151.

We wish to say that the trial judge gave painstaking care to each item in dispute between the various parties, as evidenced by his memorandum opinion, and we are satisfied with the correctness of the judgment entered thereon.

Judgment affirmed.

TOLMAN, C. J., HERMAN, MITCHELL, and PARKER, JJ., concur.