[No. 23179. *En Banc.* August 25, 1932.]

A. G. BLACK, *Appellant,* v. PHILIP MILLER COMPANY, *Respondent,* THE AETNA CASUALTY AND SURETY COMPANY, *Appellant.*[1]

[1]Reported in 14 P. (2d) 11.

410

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellants.

*Alexander Stewart* and *Robert D. Hamlin,* for respondent.

ON REHEARING.

TOLMAN, C. J.—This case was first heard by a Department of this court at the 1931 September term. The Departmental opinion will be found in 166 Wash. 430, 7 P. (2d) 33.

Thereafter, a petition for rehearing was granted,

and the case was reheard by the court sitting *En Banc* at the term just closed.

It is but fair to all concerned to say that, at the time of the Departmental hearing, no brief had been presented on behalf of the appellant Black. He was not represented by counsel at that hearing, and the judge writing the Departmental decision was left to grope his way through a stupendous record wholly unaided by brief or argument, and to ascertain as best he might what the appellant's rights, if any, might be. At this hearing, a brief was presented on behalf of the appellant, his counsel appeared and argued orally, and a very different case is now made to appear.

Because of the multiplicity of the issues and the size of the record, we shall not restate the facts as given in the Departmental opinion, but will supplement or correct them where necessary, as briefly as possible.

 As to the arbitration provision, the Departmental opinion makes too broad a statement. The contract provides:

"(3) No alteration shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architect, and when so made, the value of the work added or omitted shall be computed by the architect, and the amount so ascertained shall be added to or deducted from the contract price. In the case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference."

Clearly, then, the only question to be arbitrated under the contract is "the value of the work added or omitted," as computed and certified by the architect.

Since it clearly appears that the architect at no time attempted to make any award either by way of addition or deduction, he made no ruling which was reviewable by arbitration under the terms of the contract, and there is no question of arbitration in the case.

This was a remodeling job, by which two old buildings were to be so altered and added to as to produce a modern four-story hotel containing 156 guest rooms, where before had stood, adjoining each other, a one-story and a three-story building, neither in any degree modern.

■ The appellant argues that the contract was, in legal effect, a cost-plus contract, because, though $139,000 was named as the contract price for the work, the contract carried a proviso:

" . . . provided the cost to the contractor plus seven per cent (7%) shall equal said sum and if said cost plus 7% shall be less than $139,000, the difference shall inure to the benefit of the owner, subject to additions and deductions as hereinbefore provided, . . ."

For several weeks or months prior to the signing of the building contract, the appellant, apparently in the hope of obtaining a contract to do the work, employed the architect who was afterwards in charge, and with him labored diligently in the preparation of sketches, plans and specifications. He participated in conferences with the owner, with the prospective tenant and with those charged with the financing, and appears to have been fully aware of just what plan was in view for raising the money to carry out the undertaking.

He knew that a bond issue of $150,000, secured upon the ground and building, was to be floated; that the expense of thus financing was to be deducted from the

amount realized from the sale of the bonds; and that, at the best, there would be available from that source but $139,000 for the construction work. He and the owner both contemplated that the cost of construction should not exceed this sum, and into the contract was written a provision that if the cost was less the saving should inure to the owner. The plans and specifications then existing were most general in character. They contemplated the completion of a four-story modern hotel building at a cost of not exceeding $139,000, and a contractor's bond in that amount was given to insure faithful performance.

Therefore, taking the contract as a whole, and considering the known circumstances under which it was entered into, we have no hesitancy in saying that it was not a cost-plus contract, but that it was what it purports to be, a contract to do the work then contemplated for a fixed sum, with a saving to the owner, if the actual cost of the work, plus seven per cent compensation to the contractor, totaled less than the amount so fixed.

Perhaps the most serious and troublesome question is: What was the work contemplated, and did the owner, as the work progressed, by its direct orders or otherwise, require work to be done which was not within the contemplation of the parties at the time the contract was executed?

It seems to be conceded that, when the contract was signed, the drawings and specifications were very far from complete. Respondents seem to contend that this situation called only for ordinary detailed plans such as are usually prepared and furnished as the work progresses. On the other hand, appellant contends that the plans as they existed when he signed the contract were mere "picture plans," under which almost anything could be specified, and that, even as to de-

tail alone, the detail plans and specifications could be and were "loaded" against him. In general, we think the appellant has sustained his position by the convincing weight of the evidence.

The appellant claimed as extras and additions sixty-one different items, aggregating in amount many thousands of dollars. Some of these were allowed by the trial court, some allowed in part, but in the main they were rejected; for just what reason does not clearly appear. Each of these items presents a more or less distinct issue of fact. The evidence relating to these different issues was given by many witnesses, and is embraced in a statement of facts of more than 1800 pages, the abstract of which exceeds 700 pages. It is manifestly impossible for a reviewing court to go through all of this evidence and segregate and classify the testimony of each witness on each issue so as to accurately assemble and weigh the evidence pro and con upon each particular issue; nor will we attempt that task.

By laying down certain guiding principles, we hope to clearly establish the rule by which the trial court (or referee, if he shall think it wise to appoint one) may, from the evidence already taken, or by receiving additional evidence, if in his discretion that will tend to greater justice, reach a complete, final and just decision.

▮ The trial court was right in overruling the respondents' objection to testimony based on that provision of the contract already quoted herein, to the effect that no changes or alterations should be made in the work except upon the written order of the architect, and when so made the value should be computed and certified by the architect. Clearly, all parties disregarded that provision throughout the whole progress

of the work, and it was waived completely and entirely.

The representative of the owner, called as a witness, admitted ordering some changes and additions which would increase the cost of the work; and it is conceded that the architect, representing the owner, allowed and certified all charges for labor and material as they were incurred, regardless of whether they were covered by the original plans and specifications or were the result of changes thereafter ordered.

Under these conditions, the general guiding principle to be followed is: What was within the contemplation of the parties when the contract was signed? Manifestly, it was intended that a four-story building, containing 156 guest rooms, should eventuate, fit for occupancy as a modern hotel. Everything essential to producing that result must be held to come under the contract; but those things not specified when the contract was made, which tend to mere beauty or adornment, to display, to ultra-convenience or even to the intrinsic value and life of the building, if not within the contemplation of the parties at the time of entering into the contract, if ordered by the owner or accepted with full knowledge, must be allowed as extras.

At the time that the building contract was entered into, the respondent owner made a twenty-year lease to the hotel company, a defendant herein, and the contractor was required, as rapidly as possible, to turn over to the lessee completed parts of the building, so that the lessee might continue to operate its hotel.

It appears to have been understood that some work should be done exclusively for the benefit of the lessee, for which it would pay the contractor cost plus ten per cent. Much work was done by the contractor upon orders of the lessee's officers, and the trial court ren-

dered a considerable judgment against the lessee which was made a lien against the leasehold interest.

Of course, a lessee for a term of twenty years was not only interested in installing its fixtures for which it expected to pay the contractor, but it was also interested in obtaining under its lease the best, the handsomest, the most convenient and the most valuable building possible without an increase of cost to itself. The owner left largely to the lessee the matter of supervision of the work and the ordering of changes, feeling, no doubt, that, in the main, the lessee for a term of twenty years had an interest similar and nearly equal to its own in securing the best possible building.

The officers of the lessee, in fact and in law, became the agents of the owner for the purpose of ordering changes and extras, and were not slow to avail themselves of the privilege and authority thus conferred upon them. Whenever and wherever they saw that some change or addition would increase the value of the leasehold interest, and felt assured that the increased cost, if any, would not fall upon the lessee, they, with the consent, tacit at least, of the owner, proceeded to have the change or addition made.

So far as these changes and additions were beyond what was contemplated by the parties at the time of entering into the contract, and so far as they added to the value of the freehold, the owner must pay. But so far as they added only to the value of the leasehold, the lessee must pay.

It will, perhaps, sufficiently illustrate our view of the rule to be applied to discuss a single one of these claimed items.

The general review signed by the parties as a part of the contract provides:

"Reinforce the present Pilcher building to receive three additional stories, first story wall 17″, second and

third floors 12″ wall, fourth and fire wall 9″ wall. Heath tile may be substituted in place of brick.''

This specification was written upon the assumption that the Pilcher building as originally constructed had a thirteen-inch brick wall. When the work started, it was found that the brick wall was but nine inches, with four inches of wooden construction. Such a wall, even reinforced as specified, would not carry the additional stories contemplated; hence a change involving considerable additional expense was necessarily made. Such additional expense should not be charged to the owner as an extra, because the contractor was in no way misled by the owner. He made his own investigation, and might by diligence have learned the true condition of the existing wall. Having undertaken to construct three additional stories on this building, it was manifestly his duty, as an incident thereto, to provide sufficient foundation and wall to support the addition.

Of appellant's sixty-one claims for extras caused by these changes and additions, the trial court allowed twenty-two in whole or in part. One, as we have just seen, is not allowable. Our reading of the record does not satisfy us as to the reason or reasons for the denial of all of the remaining thirty-eight claims. The appellant testified fully and in detail with reference to each one, and pointed out rather forcibly that each was an extra under the contract. The managing officer of the owner for the most part contented himself with denying ordering anything other than as specified, and with the attempt to show that the claimed extras were specified.

The architect, who perhaps was more disinterested and in a better position to give light on the subject than anybody else, was not interrogated with reference to many of these items. As to some he testified, and

in several instances the trial court adopted his figures as to the value. He seems, however, as we read his testimony, to have practically admitted that a number of the items disallowed were in some part allowable; and with the time at our disposal to devote to the testimony, we are impressed with the thought that, upon our theory of the case, which was apparently the trial court's theory, allowances in whole or in part should be made upon at least half of these remaining items.

As hereinbefore indicated, we have not the time or the clerical help at our disposal to so reassemble and bring together the evidence upon these several issues as to enable us to reach a final decision. Moreover, we are somewhat impressed with the thought that further evidence may be desirable.

Therefore, while the judgment, as far as the court went, meets with our approval, we are constrained to send the case back with directions to the trial court to reopen the case, take further testimony, if in his discretion that is desirable, and to pass directly and specifically upon all of the appellant's remaining claims for extras, and having done so, to enter a new judgment embodying any additional amounts allowed to the appellant on the rehearing either as against the owner or the lessee.

Assuming that this will result in a substantial increase of the judgment in favor of appellant Black, he will recover costs on appeal. Such increase of Black's recovery will eliminate all matters assigned as error by the appellant surety, and in view of the peculiar manner in which this case has been brought here and presented, for which the appellant surety is at least in part responsible, it will recover no costs in this court.

Reversed and remanded.

MILLARD, PARKER, MAIN, HOLCOMB, BEALS, and HERMAN, JJ., concur.