DENNETT et al. v. DANCY, County Judge, et al. (No. 8096.)

Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1928.

Rehearing Overruled Nov. 28, 1928.

B. F. Louis, of Houston, and Seabury, George & Taylor, of Brownsville, for appellants.

Graham & Graham and H. L. Yates, all of Brownsville, for appellees.

COBBS, J. Appellants sued appellee, the county commissioners' court of Cameron county, to compel the said court to use commissioners' precinct No. 2's pro rata share of the proceeds of the bond election held in Cameron county on January 29, 1927, in the construction and improving of roads, as designated by an order of that court on January 24, 1927, at the request of the different committees of the taxpayers asking said commissioners' court to designate the roads to be improved, and the order of their improvement.

Full, complete, and responsive pleadings were filed by the defendants.

It is not necessary to further refer to the pleadings of the several parties, as they are sufficient to present the case, though quite lengthy indeed. The court granted the temporary order, but, on final hearing, it was set aside, and the cause was dismissed.

That part of the order necessary for a discussion of the case is as follows:

"And, whereas, property taxpayers from said Commissioners' precinct No. Two, together with Commissioner S. H. Bell, Jr., of said Precinct, have requested this court to designate the roads in and pertaining to said Precinct, which will be improved and constructed from the proportionate part of the proceeds of said bond issue which shall be expended in and pertain to said Commissioners' Precinct No. Two, should the issuance of said bonds be authorized.

"Now, therefore, it is hereby expressly resolved and declared by the Commissioners' Court of Cameron County, Texas.

"I. That said percentage of the proceeds of said six million dollar bond issue which pertains to Commissioners' Precinct No. 2, is hereby appropriated and set aside by the Commissioners' Court of Cameron County to be expended when and as said bonds are issued and sold, in constructing and improving roads as hereinafter designated, situated in and pertaining to Commissioners' Precinct No. 2 of Cameron County, which roads shall be constructed and improved in four groups as follows:

"Group No. 1,

"(a) From the city limits of Brownsville on Palm Boulevard and fourteenth street, respectively, to Boca Chica along the general line of El Jardin Boulevard and the location for said Brownsville-Boca Chica Road as heretofore made by the County Engineer.

"(b) From Brownsville to Point Isabel by shortest practicable connection from Brownsville-Boca Chica Road, when completed."

# 1058

Then follows said order, as recorded in the minutes of the commissioners' court of Cameron county, five days prior to the date of said election; and, at the conclusion of said order in which a priority in the use of said trust funds for the purpose of constructing the said roads, the following:

"The funds hereby appropriated shall be applied to the construction of the four groups of roads above designated, in the numerical order of the several groups, but as between roads in the same group, no order or preference in construction is intended, all roads in each group being deemed equally important, and each on a parity in all respects with all other roads in the same group."

The commissioners' court also entered its order prior to said bond election, in which it was provided that the proceeds of said bond issue should be prorated among the various commissioners' precincts in the proportion that the value of the property in said precinct stood to the total valuation of the property of Cameron county.

The case was tried with a jury, who returned a verdict, under the court's instruction, for the defendants and against the plaintiffs and each of them against the interveners and each of them, as to all the issues, and judgment was entered accordingly; from which judgment appellants appealed.

There is filed with this cause a very full statement of facts covering some 394 pages of manuscript, but, in addition thereto, the court, as it had the right to do, filed separate findings of fact and conclusions of law well supported by the testimony. As two separate findings practically cover all the material issues of fact, we copy those as the basis of this opinion, as follows:

"I find as a fact that as soon as practicable after said Six Million Dollar Bond Issue was authorized by the legal voters of Cameron County, Texas, the Commissioners' Court of Cameron County, Texas, caused the construction of what has been referred to in the pleadings and the evidence, as the Brownsville Boca Chica road, to be begun; and I further find as a fact that the construction of said road has progressed as rapidly as was practicable under all the circumstances, but that the construction thereof has not yet been completed and that work is now being done thereon looking to the completion thereof.

"I find as a fact that the construction of what is styled in the pleadings and the evidence as the Old Military road, extending about nine miles up the River and about nine miles down the River from Brownsville, is contemplated to be begun by the Commissioners' Court of Cameron County, Texas, before the so called Brownsville Boca Chica road can be completed, its completion being impracticable, from an engineering standpoint, for some twelve to eighteen months after the foundations for said road are completed, but I further find as a fact that there will be ample funds arising from the sale of portions of said Six Million Dollar bond issue, under the control of the Commissioners'

Court with which to complete the construction of the so called Brownsville Boca Chica road, as well as the construction of the so called connection between said road and the so called Brownsville Point Isabel road, as early as said construction work on said two roads will be practicable, even after the completion of said so called Military Road, as the Commissioners' Court contemplate constructing all of said roads."

We recognize the doctrine laid down in Black v. Strength, 112 Tex. 188, 246 S. W. 79, and Moore v. Coffman, 109 Tex. 93, 200 S. W. 374. We see nothing in the facts of this case that shows a disobedience of that rule laid down, which makes such an order a contract between the county and its inhabitants.

The commissioners were following the order of the court and constructing the road, and, when this suit was filed, had constructed and paved some eleven miles thereof, and the work was actually going on.

It is only in cases of very extreme and arbitrary conduct on the part of the commissioners' court that the courts are authorized to lay hands on it and restrain it in the performance of a duty or interfere with its governmental capacity or policy. In this case the appellee has never denied the legitimate construction and validity of that contract, or ever refused to follow it, but do say that now it is impossible of performance in their judgment at the present time. The building and construction of county roads, as a matter of law, is peculiarly a province of county commissioners. The validity of the order here is not denied, but it is contended that it does not require them to abandon all road construction from the proceeds of the bond issue until the Boca Chica road is completed or that said order requires them to place a first-class concrete highway to Boca Chica, and on the cut-off road to Point Isabel, and that said order does not require that said cut-off road to Point Isabel be designated nor construction begun thereon until said Boca Chica road is completed. We do not think, by reason of the contract alone, and regardless of the evidence, appellants are entitled to an injunction. There is no evidence that shows the court is not obeying the order and will ultimately refuse to obey or carry it out. Nor is there anything so urgent in the order itself to require the court to push forward this improvement, regardless of and notwithstanding the condition of the road. The court cannot be made to close its eyes to the existing conditions and such as may arise, from time to time, in regard to the road.

The proof shows that the appellee was not bound to any particular type of road building or construction, nor obligated to build any particular character of road at any particular place.

In giving priority to the building of the Boca Chica road, it is obvious that there was

no intention that no other roads in the order should be worked on at all until that road was completed. Judge Dancy, the county judge, testified:

"There has never been any order entered by the commissioners' court as to the character of road that will be built from the termination of the pavement on the Boca Chica Road to Boca Chica, or on any of the other roads, except that order of January 24th, 1927, for the construction and improvement of roads. There has been no order entered saying whether the road to Boca Chica should be a paved or graveled road —nor any other road in the County for that matter."

That it is not practicable to build the road now at the risk of a total waste of funds, the engineer, Mr. Washington, testified:

"When the construction work on this road to Boca Chica is completed, if it then becomes necessary to surface it with concrete or other material, it will depend upon conditions as to how long that dump will have to be allowed to season or settle before it can be surfaced. I would say the minimum time would be something like a year, and the maximum more than that."

Mr. Davis, another experienced road builder, testified:

"Assuming that the Boca Chica Road is to be paved, I would say that under ordinary weather conditions like we have had heretofore, that road should not be paved until winter after next."

It is well enough to consider the intent and purposes of the committee who presented the resolution and what the court intended to be the effect of the order at the time of its passage. Mr. J. B. Scott, a member of the committee who presented this order to the court, testified:

"In our deliberations there was a discussion as to what the contingency would be in the event of delay in the construction or completion of one of the roads provided for as to what the situation would be as to the succeeding roads. That was discussed very thoroughly, because all of the committee had lived here for a number of years and were familiar with conditions on the Boca Chica road; that is the way the road would have to be built, and while we were in favor of that road being built first in so far as it could be and the funds provided to build the road, we knew if the river came up, as it is right now, and as it has done in years past every year, and sometimes for three or four months, it might be three or four years before that road could be completed, and while we wanted the money set aside or provided for out of the bond issue to build the road, that is what we meant by designating it as the first road, that it must be the first provided for, but as far as holding all the money as it came in from the bond issue if it could not be expended on that, we had no such intention, and if we had had such intention and had expressed it to the commissioners' court, they certainly would not have passed an order of that kind."

Upon this construction the court is now acting. It is not arbitrary or unreasonable, but highly commendable.

The county has been engaged in an effort to ascertain the shortest practicable route for the road to Point Isabel, and at least three routes have been surveyed and examined. The designation of the route itself was left to the sound discretion of the commissioners' court, because the building of the road involved serious engineering problems. Much of it is exposed to the sea and to the tropical and tidal storms, because of the flats over which the road must run. Appellants deny that they have refused to build the road. It is true, the county judge has stated, so far as he is concerned, he does not favor building the cut-off road to Point Isabel at any particular location, because it would be a waste of county funds. The order itself only contemplates the selection of the route definitely when the Boca Chica road is completed. The order does not require the Point Isabel road to be designated nor constructed until the Boca Chica road is completed.

■ The burden was upon appellants to establish their right to an injunction, but we think they have failed to do that.

Since this record shows that appellees are now engaged in building the road and obeying the order of the court, we must decline to grant the relief prayed for. And, so thinking, we affirm the judgment of the trial court.