## MURRAY et al. v. WILLIAMSON et al.

### No. 3957.

Court of Civil Appeals of Texas. Texarkana.

Nov. 20, 1930.

Rehearing Denied Nov. 27, 1930.

Robert Lee Bobbitt, Atty. Gen., Sloan Blair, Asst. Atty. Gen., and Ramey & Davidson, of Sulphur Springs, for appellants.

J. K. Brim and J. E. Spence, both of Sulphur Springs, and A. P. Dohoney, of Paris, for appellees.

LEVY, J.

The appeal is by the members of the commissioners' court and the county judge of Hopkins county from the judgment of the district court awarding the plaintiffs a permanent injunction. The injunction order appealed from restrains the commissioners and county judge, viz.: "Be and they are hereby perpetually enjoined from using and expending any of the funds of Hopkins County derived from the sale of bonds issued for the purpose of building roads and highways in said County in pursuance of an election held for that purpose on July 6, 1929, in the construction of the State Highway from Sulphur Springs South to the Hopkins and Wood Counties' line known as State Highway No. 37a, as now laid out by O. W. Grafa, resident engineer of Hopkins County, Texas, and approved by State Highway Commission of Texas."

It appears that an order was duly entered of record by the commissioners' court of date May 16, 1929, ordering an election to be held throughout the county of Hopkins on July 5, 1929, to authorize the issuance of $1,750,000 of county road bonds in the following purposes expressly named in the order:

"First: Bonds to be issued in the aggregate sum of $666,500.00 for the purpose of construction and purchase of district road bonds of said County, which bonds shall be issued in similar denominations, bearing the same rates of interest, having the same dates of maturity, and with a similar option of payment as the outstanding bonds against the road districts Numbers, One (1) Two (2) Three (3) Four (4) Five (5) Six (6) Seven (7) Eight (8) Nine (9) and Ten (10) of said County.

"Second: Bonds to be issued in the aggregate sum of $1,083,500.00 for the further construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof throughout such County which bonds may run for a time not to exceed forty years from their date as may be determined by the Commissioners' Court of said County, and bear interest at the rate of 5% per annum."

Later, on May 28, 1929, at the regular term of the commissioners' court, the following order was duly passed by the court and entered of record:

"In order that the taxpayers and the voters of Hopkins County, Texas, and all others interested therein may understand the attitude and purposes of the Commissioners' Court of Hopkins County, Texas, with reference to the expenditure of the proceeds of the $1,750,000.00 in road bonds to be voted upon at an election to be held in said County on the 6th day of July, 1929, in the event said bonds are voted at said election, it is ordered, adjudged and decreed by the Commissioners' Court of Hopkins County, Texas, that in case said proposed issue of bonds is carried the proceeds thereof will be handled and expended by this Court in substantial compliance with the terms, of the report in this connection made by the Sub-Committee chosen by the General Road Committee upon the location of the roads to be constructed from the proceeds of said bonds, which said report is signed by J. S. Campbell, J. S. Butler, C. F. Massey and W. F. Alexander and now on file with this Court and ordered recorded in the minutes of this Commissioners' Court and open at all times to public inspection."

Before the date of the above order a mass meeting of the citizens of the county was called and held in the view of a specific action with respect to the particular roads to be constructed or aided, and the amounts to be allocated to such roads out of the proceeds of the bonds should the same be voted, issued, and sold, and to recommend and to urge the commissioners' court to make a specific designation of the roads so selected for construction or aid, and the amount of the funds to be specifically used therefor. At this mass meeting a committee was appointed termed a "Good Roads Committee," and this committee in turn appointed a subcommittee composed of four citizens, one from each

commissioners' precinct, with authority to make a survey of the county and embody their recommendations in a report to the commissioners' court. The report so made was duly entered in the minutes of the commissioners' court, and reads, as far as material to state:

"To the Honorable Commissioners' Court of Hopkins County, Texas:

"We, the Sub-Committee chosen by the General Road Committee of Hopkins County as a Lateral Road Designating Committee, submit the following report as locations for the lateral roads to be constructed with the proceeds of the bond issue to be applied to lateral roads. And also such other recommendations regarding the proposed bond issue as stated therein, as follows:

### Designation of Lateral Roads.
#### Precinct No. 1.

| Location of Road. | Mileage. | Estimated Cost. |
|---|---|---|
| From Cumby to Miller Grove and a spur connecting this road to Palestine School Community.... | 8 .... | $ 25,000 00 |
| From Bonanza to West Highway Road, intersecting same just East of Brashear.................. | 10 .... | 25,000 00 |
| From Shirley North to West Highway intersecting same at or near Polkjoy place..................... | 3½.... | 6,000 00 |
| From near Flannagan's place via Liberty to Arbala and Sulphur Springs road intersecting same at or near Redding Place........ | 3½.... | 6,000 00 |
| From Arbala to Yantis Highway Road .............................. | .... | 5,000 00 |
| From West Highway Road about 1 mi. West of Brashier, South, about ............................ | 3 .... | 5,000 00 |
| Applied to Road from Arbala to Sulphur Springs .................. | 12 .... | 25,000 00 |
| Surplus for this Precinct......... | .... | 22,000 00 |
| Total ..................................... | | $120,000 00 |

#### Precinct No. 2.

| Location of Road. | Mileage. | Estimated Cost. |
|---|---|---|
| From Sulphur Springs and Como Highway at or near Martin Springs, via Reily Springs or just West of Reily Springs to County Line ..................... | 7 .... | $ 20,000 00 |
| From Como via Greenpond to Reily Spgs. ...................... | 5 .... | 10,000 00 |
| From North via Pine Forest to East concrete highway..... Pick- South to Winnsboro road ton at or near Black Oak...... | 7 .... 7 .... | 50,000 00 |
| From Winterfield West to Pickton-Pine Forest Road........... | 1½.... | 3,000 00 |
| From Como via Brinker to E. Concrete Hwy. ........................ | 7 .... | 14,000 00 |
| Applied on road from Sulphur Springs to Crush................. | 6½.... | 8,000 00 |
| From Pine Forest to Greenwood.. | 3 .... | 5,000 00 |
| From Como south to Winnsboro road at or near Cotton Plant... | 4 .... | 5,000 00 |
| From or near Harmony Church South crossing Como and Winnsboro Highway to or near Center Grove Church House............. | .... | 5,000 00 |
| Total ..................................... | | $120,000 00 |

"Note: Roads South of Saltillo and Weaver are shown in designations for No. 3 hereafter."

Here follows location of roads, mileage, and estimated cost for both precincts No. 3 and No. 4:

"The provision and condition is made in connection with the designations of Precincts Nos. 1 and 2 above, that in the event the final designations of the North and South Highway, South from Sulphur Springs should not be made on or along the present Yantis Road via Shooks Chapel and Cross Roads and should be made along the Martin Springs and Reily Springs Route then in such event, $10,000.00 of the money applied to the road from Martin Springs via near Reily Springs to County Line, set out above in Precinct No. 2, and $10,000.00 of the surplus of Precinct No. 1 making a total of $20,000.00 shall be applied to said road from Sulphur Springs to County Line near Yantis via Shooks Chapel and Cross Roads, etc. (We make these provisions and conditions on the theory that we do not know where such State Highway will be finally designated.)

"The provision and condition is made in connection with the designations and estimates of Precincts Nos. 1 and 3 above, that in the event the State Highway Commission should grant and designate a State Highway running Northeast and Southwest across the County, which will pass through said Precincts Nos. 1 and 3, then enough of money from the proceeds of the bond issue as may be needed and necessary to match the fund and money furnished by the State Highway Commission for the construction of such State Highway may be taken from any or all of the designations and estimates made in said Precincts Nos. 1 and 3 excepting the designations made extending South and North from Saltillo, and South and North from Weaver, these designations shall not be changed but shall remain the same and be constructed regardless of such State Highway since these roads will be South of the Creek and the territory adjacent thereto not affected by such State Highway, and also excepting further the designation from Cumby to Miller Grove with a spur to Palestine as set out in the designation of Precinct No. 1, this road and the territory adjacent thereto, we think will likely not be affected by such Highway. (This provision and condition is made on the theory that it is the hope that in addition to the direct North and South Highway, an additional State Highway can be secured running in a Northeast and Southwest direction through the County, which will pass through said Precincts Nos. 1 and 3, and if such a highway should be secured, we consider it to the best interest to leave our designations and estimates in such a way that sufficient money would be available for the County from these two precincts to match the State and construct such State Highway, we think this money could be taken from the

designations made in the general locality where such highway may be designated, and out of the amount which has been allotted by us for the construction of State Highway Roads, and not effect the general lateral roads in these precincts, but we understand as a matter of a legal proposition, such provisions and conditions are necessary. It being the intention and desire of the committee that the lateral roads as designated above in these two precincts Nos. 1 and 3, shall not be changed or affected or taken from any more than may become absolutely necessary for the purpose of matching the State's money and constructing such State Highway through said Precincts if such highway can be secured.)

"The mileage given in the above designations is in some instances only estimated and may not be exactly correct on all roads, but in most instances the callings state both ends of the road and it is intended that they go from point to point where stated. The amount listed as surplus in the various precincts is intended by the Committee to be used by the respective Commissioners in such precincts and the Commissioners' Court in the construction of additional lateral roads at places which may be later determined to be most needed or to be applied at such places most needed at the discretion of the Commissioners' Court. The amounts shown as the estimated cost of the construction of the various roads, in all of the above designations, are of course merely estimates, and in the actual construction of the roads, where there are amounts not needed or extra amounts needed, it is intended by the Committee that such should be handled at the discretion of the Commissioners' Court, however it is not intended by this statement that the Commissioners' Court will be relieved of the obligation and duty of constructing lateral roads along the designations stated.

"We recommend that the money of the bond issue allotted to the construction of State or State and Federal Highways through the County, the amount necessary be first used in matching the State or the State and Federal Government in the construction of the North and South highway which has already been granted, and approved by the State Highway Commission, and then such amount or amounts thereof as may be needed and necessary be used in the construction of the Northeast and Southwest Highway and other highways which may be secured, and in the event all of the same shall not be needed in securing and the construction of such highways, then any balance thereof remaining shall be used in the construction of additional lateral roads or used at the discretion of the Commissioners' Court to the best interest of the County, always giving each precinct an equal portion of lateral roads. $250,000.00 of the proceeds of

said bonds shall be kept and used for maintenance purposes only, and the bonds to such amount shall not be issued and sold until the money therefrom is needed for maintenance purposes; and that after all outstanding bonds of the County have been substituted and retired out of the proposed issue then the remaining portion of the proceeds after deducting the present outstanding bonds, which as we understand is in the aggregate about $666,500.00 including the $50,000.00 of Road District No. 10 which has not yet been used, and the $250,000.00 for maintenance purposes, then of the balance $480,000.00 shall be used in the construction of lateral roads as per the above designations and the balance applied to and used for the construction of highway roads if the same can be secured and for the further construction of lateral roads as the Commissioners' Court may think to the best interest of the County and people of the County.

"We further find and recommend that the $250,000.00 set aside for maintenance only be pro rated to the four commissioners precincts, equally, and be issued and used in amounts not exceeding $12,000.00 per year, which would be $3,000.00 per year for each precinct.

"Respectfully submitted by the under-
'signed,

"J. S. Campbell
"Committeeman from Precinct No. 1.
"J. A. Butler
"Committeeman from Precinct No. 2.
"C. F. Massey
"Committeeman from Precinct No. 3.
"W. F. Alexander
"Committeeman from Precinct No. 4."

It appears that in the days preceding the date of election day it was generally made known to the voters of the county that, in case the bond issue should carry, the funds arising from the sale of the bonds would be specifically used in accordance with the plan recommended by the committee and adopted by the order of the commissioners' court on May 28, 1929. The voters were assured that, under the report and the order of the commissioners' court adopting it, a state highway would have to be built by the side of the Martin Springs and Reily Springs road, or the Shook's Chapel and Cross Roads road. The election was duly held on July 5, 1929, and the bond issue carried. The commissioners' court ordered the bonds issued.

Some of the plaintiffs in the case own property and live on the established road in precinct No. 2 leading from Martin Springs via Reily Springs to the county line, and the other plaintiffs in the case own property and live on the established road leading from Sulphur Springs to Yantis in Wood county via Shooks Chapel and Cross Roads. Since the date of the bond election the state highway commission has designated the route of highway No. 37–A running south from Sul-

phur Springs to the Wood county line. The route so designated runs between the two local roads just named above. On July 28, 1930, the commissioners' court passed and entered in the minutes the following:

"Be it resolved by the Commissioners' Court of Hopkins County that there is appropriated out of the bond issue voted July 5, 1929, and set aside for the purpose specified and subject to the order of the State Highway engineer the sum of $319,896.20 which funds shall be held solely for the purpose of constructing the Quitman-Cooper road; and that if this tender is accepted, the above funds as specified in escrow."

Highway No. 37-A runs north and south through Hopkins county, from Wood county line to Delta county line, a distance of twenty-seven miles, and was locally known as the "Quitman-Cooper Road." $83,377.76 of the above-stated amount was placed in the Sulphur Springs bank "in escrow" to be used in the construction of that part of the state highway No. 37-A involved in the suit. The plaintiffs in their petition alleged:

"4. Plaintiffs further allege that as appears from the report of the Committee the order of the Commissioners' Court thereon, it was contemplated that the proposed highway running South from Sulphur Springs to the South Boundary line of Hopkins County, would follow one or two routes, on both of which are old and established roads from Sulphur Springs to Yantis in Wood County: —one of said routes going via Martin Springs and Reily Springs and the other route by Shooks Chapel and Cross Roads to Yantis. That plaintiffs W. B. Williamson, L. P. Bird, R. L. Glenn, J. E. Buford, S. H. Buford, Mrs. Lizzie Buford and W. A. Buford, own property situated on the Martin Springs and Reily Springs route, with residences fronting the established road on said route. That the other plaintiffs own property on the Shooks Chapel and Cross Roads route with their residences fronting the established road along said route.

"That in the campaign preceding the election, defendants and others who were advocating the bond issue, repeatedly stated to plaintiffs and other citizens along the two routes above referred to, that one of said routes would be selected as a highway and that in case the bond issue should carry, the funds arising from the sale of the bonds would be used in accordance with the plan recommended by the citizens' committee and adopted by the Commissioners' Court, and made the basis for the proposal to vote road bonds as aforesaid.

"5. Plaintiffs further allege that the State Highway Commission has designated as a highway running South from Sulphur Springs to the Hopkins County and Wood County Line, a route that does not follow either of the routes above referred to as recommended by the citizens' committee and adopted by the Commissioners' Court: but that said route so designated by the State Highway Commission is between the two routes above referred to, and that if a highway is constructed along said route, it will pass through the premises of plaintiffs and others residing on the Martin Springs and Reily Springs route, back of their residence, will damage their property and afford them no means of ingress and egress to and from their homes.

"6. Plaintiffs are informed, and believe and allege the fact to be that while no order has been entered of record to that effect, defendants as County Judge and County Commissioners of Hopkins County, Texas, have agreed to and approved the plan of the State Highway Commission as above outlined; and that the State Highway Commission has already asked for bids for the work and construction along the proposed highway.

"Plaintiffs further allege that the route for the highway as designated by the State Highway Commission is some distance away from the Shooks Chapel and Cross Roads route from Sulphur Springs to Yantis, as above alleged, and that the same will be of little benefit to plaintiffs and others who reside on said Shooks Chapel and Cross Roads route, and will not afford a convenient means of travel to and from their homes, which front upon the old road along said route, and that their property will be damaged and depreciated in value if said highway is constructed as proposed; and plaintiffs will have no recourse on anyone for compensation for such damages."

The prayer of the petition was: "For a permanent injunction restraining the defendants as County Judge and County Commissioners from using and expending any of the funds in their hands as aforesaid upon the construction of the highway as designated by the State Highway Commission as aforesaid."

The defendants answered by exceptions, demurrer, and general denial. Among the special answers set up was the following: "Defendants would further show to the Court that the expenditure of the funds for the payment of the pro rata costs of Hopkins County for said State Highway No. 37-A was vested in the discretion of the Commissioners' Court in the voting of the bond issue as aforesaid; that the Commissioners' Court of Hopkins County have agreed with the State Highway Commission and have ample and sufficient funds to carry out his contract with the Highway Commission relating thereto and without doing violence or expend any of the funds apportioned and appropriated or designated by the Committee report referred to and especially the amount set aside for the lateral road construction in said County."

In view of the foregoing statement from the record, it is believed by all the members of this court that, assuming the order of May 28, 1929, adopting the report of the subcommittee, was a valid pre-election order and binding in its full terms upon the commissioners' court, yet the injunction as granted in this cause cannot be upheld because it conclusively appears in the record that the commissioners' court did not exceed their authority in setting aside the sum of $319,896.20 in aid of the construction of state highway No. 37-A. The sum so set aside to aid in the construction of state highway No. 37-A cannot be said to work injury to the plaintiffs, entitling them to an injunction, as the evidence fails to show that the sum so set aside in any wise operates to take from or divert the amounts of the proceeds of the bonds allocated to the use and expenditure upon the lateral roads involved in the suit. In no view could it be said that the commissioners' court intended by the terms of the order of May 28, 1929, to select and designate or fix the route on the ground of the state highway contemplated to be aided out of the proceeds of the bonds.

Therefore the judgment is reversed and here rendered in favor of the appellants, the plaintiffs, to pay the costs in the case.

The writer expressing his opinion further thinks that the order of the commissioners' court of May 28, 1929, should be regarded, as the trial court did, as in effect a pre-election order. Black v. Strength, 112 Tex. 188, 246 S. W. 79. By the order so made, considered in its entirety and fairly construed, it was contemplated and intended that in no event should any of the local county roads named be abandoned, nor in any wise nor in any event should the allocation of the sum to be expended on such roads out of the proceeds of the bonds be otherwise used or diverted. In this view, the order of the commissioners' court should be interpreted as absolutely establishing and designating the local road involved in the present suit as leading from Sulphur Springs near Martin Springs via Reily Springs to county line as a road to be constructed or aided out of the proceeds of the bonds, and as setting aside for use such amount as might be needed for the construction of the full length of the road, and including a connection with the state highway running north and south, although and notwithstanding the route of such state highway in final designation was laid to run, not along, but away from, such road. Likewise the Shooks Chapel and Cross Roads road involved in the suit was to be constructed or aided out of the proceeds of the bonds.

Therefore the plaintiffs would be entitled to have the routes so absolutely fixed by the order enforced to the full extent of the order, in the event the commissioners' court refused or failed to expend or use the proceeds derived from the bonds and allocated to the local roads mentioned in the construction of such local roads. But it does not appear in this record that the rights of the plaintiffs above stated have in any wise been interfered with or denied in the appropriation made in the aid and construction of state highway No. 37-A.