STERRETT et al. v. BELL et al.

No. 14410.

Court of Civil Appeals of Texas.
Dallas.

May 25, 1951.

Henry Wade, Dist. Atty., Julien C. Hyer, Asst. Dist. Atty., George W. Hutchison and J. Hart Willis, all of Dallas, for appellants.

Joe A. Worsham, Jos. Irion Worsham, and Worsham, Forsythe & Riley, all of Dallas, for appellees.

CRAMER, Justice.

This proceeding was filed by Tyree L. Bell and 37 other property-owning taxpayers of Road District No. 1 of Dallas County, Texas, as plaintiffs, against the County Judge and four County Commissioners of Dallas County, who together compose the Commissioners' Court, and as such, the governing body of Road District No. 1, as defendants, seeking an injunction against defendants to prevent them from receiving and opening bids; from letting a contract, and spending (on repairs, etc., to Belt Line Road) $3,300,000 of a $22,500,000 bond issue authorized by the qualified voters of such Road District, based on the allegation that the defendants were proceeding in an illegal manner.

The facts are not seriously in dispute. In the order calling the election it is provided: "It will be the policy of the Commissioners' Court to do all construction work by contract on a competitive bidding * * *." (With one exception not material here.)

After the electorate authorized the issuance of the bonds the Commissioners' Court furnished information to bidders for clearing and grading, widening, drainage structure, permanent paving and bridges on Belt Line Road (approximately 90 miles of road) by a three to two vote, and sought bids for such work on the following basis, to wit:

"(1) Reimbursement of all expenses necessary to performance of the work, but

518

excluding any home office overhead expenses or interest on invested capital.

"(2) A fee of ————% of all costs reimbursed under subparagraph First, above, which fee shall cover all profit, home office overhead expense and interest on invested capital."

In the information to bidders it was stated that the projects would require:

"(1) Removing and replacing culvert pipe."

"(2) Asphalt stabilized base."

"(3) Reconstruction, widening, and strengthening flexible base, and asphalt surfacing."

"(4) Flexible base construction."

The bids as shown by the above were not on the cost of the project, but only on a supervision fee. The information to bidders also provided, material here, that:

"(1) General: Construction of the roads and bridges listed in the proposal at the earliest possible time is essential to the citizens of Road District No. 1 of Dallas County, Texas. The current world crisis and the United States rearmament program make it essential to proceed with the work involved immediately while materials and labor are available for construction of Belt Line Road, which consists of approximately 90 miles of roadway. Time is an essential factor in the matter of contracting for such improvements in view of the present trend in prices of materials and labor and that several months time would be required to make detailed surveys, investigations, plans, specifications and the exact determination of the quantities of work required for such improvements, and that during the time required for such detailed surveys, plans, etc., it is considered probable that required materials may become very scarce and be placed under restrictive controls, which would hinder and make difficult the completion of the desired improvements, and that prices of such materials may be substantially higher, if available at all. It is therefore considered to be to the best advantage of Road District No. 1 of Dallas County, Texas to enter into a contract with a reliable, experienced contractor who can proceed with the work while it is still under planning.

"The contract with a contractor for the construction of these improvements in this manner must of necessity provide that the contractor furnish the materials, labor, supervision, equipment, tools and incidentals necessary to perform the work and be reimbursed for the actual cost thereof plus a fee for his services. Under the provisions of such a contract, the contractor will be enabled to place orders and get commitments at the present time and at present prices for required materials and will further be enabled to allocate equipment and experienced personnel for such work before it becomes necessary to obligate such equipment and personnel for other work or to become involved in restrictive obligations." And,

"It is understood that the amount of money available for the work is approximately $3,300,000.00."

It is also provided:

" * * * The contractor further will purchase materials in the open market at the lowest price obtainable." And,

"Equipment Rentals: To be approved by the Commissioners' Court." And,

"(16) Audit: The Road District will audit the accounts of the contractor at all times, and the contractor will furnish the auditor with adequate facilities for his work."

"(17) Defective Work: Any work not in accordance with the plans and specifications to be approved by the court, which is required to be replaced, shall be done at the sole expense of the contractor and the Road District will not reimburse contractor, or allow any fee on such rework."

"(18) Payment: On the 10th of the following month the Road District will reimburse the contractor for all expenses incurred up to the end of the preceding month and a proportionate amount of the fee earned upon the presentation of original vouchers and payroll sheets."

After hearing the evidence the trial court granted the temporary injunction prayed for by plaintiffs, fixed the amount of the bond which was made and filed, and there-

after the defendants duly perfected this appeal.

The parties will be designated as in the trial court. The defendants (appellants here) brief six points of error in substance as follows: (1) The trial court committed fundamental error in overruling their plea to the jurisdiction and motion to dismiss for the reason (a) plaintiffs had not requested and the district attorney had not refused to file the suit, and (b) it was also not shown that the Commissioners' Court had engaged in an illegal act; (2) committed material error in overruling their motion to dismiss called to the court's attention (a) before any evidence was introduced, (b) and at the conclusion of appellants' evidence, and (c) at conclusion of all the evidence; (3) material error in finding there were no adequate common standards and specifications for the guidance and instruction of bidders and therefore no "competitive bidding"; (4) material error in its finding that the letting of the contract on a cost-plus-a-fee basis was not "competitive bidding"; (5) material error in finding cost-plus bids for road construction not to be competitive; and (6) material error in granting the injunction on February 8, 1951 because it was brought to the court's attention prior to the judgment that only one bid had been received and it had been returned to the bidder and the time for bids had expired; therefore the question was moot.

█ Points 1 to 5 inclusive will be considered together. The record shows the plaintiffs did not request the district attorney to file the suit. This was not necessary. Stovall v. Shivers, 129 Tex. 256, 103 S.W.2d 363; Kirby et al. v. Transcontinental Oil Co., Tex.Civ.App., 33 S.W.2d 472, writ ref.; Garland et al. v. Sanders et al., Tex.Civ.App., 114 S.W.2d 302, error dismissed; Const. sec. 8, Art. 5, Vernon's Ann.St.; Art. 1908, V.T.C.S.; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791 at page 794. Any interested party may bring the suit. Every taxpaying property owner in Road District No. 1 was an interested party. These points also assert the motion was good because no illegal act on the part of defendants was alleged or proved, and also attacked certain findings of the trial court against them. True, "It is only in cases of very extreme and arbitrary conduct on the part of the commissioners' court that the courts are authorized to lay hands on it and restrain it in the performance of a duty or interfere with its governmental capacity or policy." Dennett v. Dancy, Tex.Civ.App., 10 S.W.2d 1057, 1058.

█ But plaintiffs in this case assert that the Commissioners' Court adopted a policy " * * * to do all construction work by contract on competitive bidding" (with one exception not material here); that such policy was adopted before the election authorizing the bonds and as a part of the order calling such election. In our opinion such provision in the order was valid and became a part of the questions voted upon at the election by the property-owning taxpayers of the District. Moore v. Coffman, 109 Tex. 93, 200 S.W. 374. What this Court said in Wright v. Allen, Tex.Civ.App., 257 S.W. 980, 985, is applicable here. We there held: "The pre-election orders entered by the commissioners' court of Dallas county in reference to said bond election must be treated as a contract between the commissioners' court and the electorate entitled to vote at said election; not that the commissioners composing said court did not have the right to use their discretion vested in them by law in reference to the place of construction, the manner of construction and the cost thereof, but that they had exercised it in the making of said orders, and, the election having been held in pursuance thereof, the electors thereat, being vitally interested not only in the voting for the issuance of the bonds but in the construction of the road system, are entitled to be protected in the carrying out of the contract thus made in the form of the orders entered." See also Thayer v. Greer, Tex.Civ.App., 229 S.W.2d 833 and cases there cited; Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915; Fletcher v. Ely, Tex.Civ.App., 53 S.W.2d 817; Stucky v. Jones, Tex.Civ.App., 240 S.W. 565; Murray v. Williamson, Tex.Civ.App., 32 S.W.2d 863. Under the authorities, if the Com-

missioners' Court violated its compact with the voters made in its order for the election, and adopted by the voters at the election, it acted arbitrarily and was properly enjoined. The only material question here is as to whether the contract in question meets the covenant provisions for "competitive bidding."

"Competitive bidding" requires due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. Its purpose is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners. There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or material man, or increase the cost of the work or of the materials or other items going into the project.

The proposed contract here involved does not meet the test of competitive bidding. The only item involved in the proposal here, upon which a competitive bid is sought, is the contractor's fee or profit. There is no provision in the proposed contract for a lump sum competitive bid on the cost of all materials, labor, etc., going into the work, and no provision for competitive bidding on such items severally or in groups. Such items (by the express terms of the proposal by the Com-

missioners' Court) are to be contracted for and purchased by the "percentage bidder" or "contractor," who is to be reimbursed in full for the amounts paid therefor. If the Commissioners' Court could legally delegate the responsibility of buying materials, after competitive bidding, to the contractor (which we do not pass upon), still there is no provision in the contract that the contractor himself must buy the materials only upon contract, after competitive bidding thereon. There is also the question of rentals on equipment to be used in the work involved. There is no provision for it to be contracted after competitive bidding thereon.

We therefore hold that the plan here proposed by the Commissioners' Court for the rebuilding, etc., of Belt Line Road violates the Court's covenant with the voters set out in the order calling the election. Points 1 to 5 inclusive are overruled.

Point 6 asserts the questions involved herein were moot at the time the injunction was granted. The filing of this suit did result in the receiving of only one bid and its return to the bidder unopened. "A moot case is one which seeks to determine an abstract question which does not arise upon existing facts or rights." Black's Law Dictionary, 3rd Ed. In this case the threatened letting of the contract was in the process of being carried out at the time this suit was filed. The fact that the defendants in this proceeding now contend that the manner in which they were proceeding was legal, alone, prevents the question from being moot. They do not state that they will not proceed again, as before, if the suit is dismissed. The point is overruled and the judgment below is

Affirmed.