

# THE ATTORNEY GENERAL
# OF TEXAS

August 17, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Andy J. McMullen          Opinion No.  JM-940
District Attorney
Hamilton County                     Re:  Whether a contract for
P. O. Box 706                       services of a  construction
Hamilton, Texas   76531             management  consultant    is
                                    excepted  from  competitive
                                    bidding    requirements    of
                                    section 21.901 of the Texas
                                    Education Code   (RQ-1335)

Dear Mr. McMullen:

        You inform us that  a school district undergoing  rapid
growth seeks to employ a construction management  consultant
to advise the  district on  numerous construction  projects.
You add that  the consultant  is also  a general  contractor
that has performed or is performing work for the district in
its capacity  as  general  contractor.  You  ask  whether  a
contract for  the  services  of  a  construction  management
consultant is excepted from the competitive bidding require-
ments of section  21.901 of  the Texas Education  Code as  a
contract for "professional services."   We conclude that  it
is exempted from the competitive bidding requirement.

        Section 21.901  of  the  Education  Code  provides  the
following in pertinent part:

            (b) Except as  provided in Subsection  (e)
        of this section, all contracts proposed to be
        made by any Texas public school board for the
        construction, maintenance, repair or  renova-
        tion of any building or for materials used in
        said  construction,  maintenance,  repair  or
        renovation, shall be submitted to competitive
        bidding when  said  contracts are  valued  at
        $5,000 or more.

            (c) Nothing in this section shall apply to
        fees  received    for  professional    services
        rendered,  including  but    not   limited    to

> architect's fees, attorney's fees, and fees
> for fiscal agents.
>
>      . . . .
>
>      (e) If a school building or school equip-
> ment is destroyed or severely damaged, and
> the school board determines that the time
> delay posed by the competitive bidding
> process would prevent or substantially impair
> the conduct of classes or other essential
> school activities, then contracts for the
> replacement or repair of such building or
> equipment may be made without resort to
> competitive bidding as otherwise required by
> this section.

Subchapter B of chapter 271 of the Local Government Code provides competitive bidding procedures for contracts awarded by common or independent school districts for the construction, repair, or renovation of structures requiring an expenditure of more than $10,000 from the funds of the district. Local Gov't Code § 271.024. Contracts that must be awarded under the terms of the Professional Services Procurement Act, V.T.C.S. art. 664-4, are exempted from these procedures. Id. § 271.022. Article 664-4 requires contracts for the professional services of licensed physicians, optometrists, surgeons, architects, certified public acountants, or registered engineers to be awarded primarily on the basis of demonstrated competence and qualifications.

You describe the duties of the construction management consultant as follows:

> The overall function of a construction
> management consultant is to control time and
> cost on behalf of the owner/school district
> during the construction process. In this
> regard his duties include without limitation:
> (1) establishing a project budget; (2) pre-
> qualifying and interviewing architectural and
> engineering firms and advising the owner/
> school district on the final architect/
> engineer selection; (3) organizing the
> design phase of the project; (4) establish-
> ing a project schedule from design through to
> completion of the construction; (5) advising
> and consulting with the owner/school district
> on materials, construction methods, and the
> arrangement of the construction contract

package;   (6)  managing   the  bidding   and
negotiation process;   (7) handling  contract
awards;   (8) providing coordination among the
various specialty contractors;   (9) supervis-
ing  the  work;  and  (10)  establishing  the
project's accounting system.  In essence  the
construction  management  consultant  accepts
managing responsibility  of the  entire  con-
struction process from design through to  the
completion of construction.[1]

You do not  indicate whether  it is intended  that the con-
struction management  consultant  will serve  as  the  prime
contractor or subcontractor  on any project  covered by  the
consulting contract.

Section  21.907  does not  define the  phrase  "profes-
sional services."  The courts  have not adopted a  universal
definition of the term; however, several cases suggest  that
it comprehends labor and skill that is "predominantly mental
or intellectual, rather than physical or manual."   Maryland
Casualty Co. v. Crazy Water  Co., 160 S.W.2d 102 (Tex.  Civ.
App. - Eastland 1942, no writ).  It no longer includes  only
the services  of lawyers,  physicians, or  theologians,  but
also  those  members  of  disciplines requiring  special
knowledge or attainment and a high order of learning, skill,
and  intelligence.  See Attorney  General  Opinion  MW-344
(1981); Black's Law Dictionary 1089-90 (5th ed. 1979) (defi-
nition of "profession").

Section 21.901(c) is a  narrow exception to the  strong
public policy  favoring competitive  bidding  on  contracts
involving the expenditure of  public funds.  Its purpose  is
to permit  a  school  district to  obtain  the  professional
services of the most  competent and experienced  individuals
available.  See Attorney General  Opinion MW-342 (1981)  and
cases cited therein.  This purpose would be thwarted if  the
district was required  to award  contracts for  professional
services  to  the  lowest,  and  possibly least  qualified,
bidders.  Id. Another reason  for dispensing with  competi-
tive bidding  is  that professional  services,  unlike  con-
struction work and  materials, can seldom  be measured  with
objective criteria.  Since  construction work and  materials

_____

1.  We assume that the school district does not  intend
to delegate  the power  to make  final decisions  to a  con-
sultant.  See Attorney General Opinion JM-932 (1988).

must conform to specifications of the school district's choosing, it is reasonable to award contracts for such work or materials on the basis of the lowest responsible bid. However, with work involving specialized, technical, or aesthetic judgment, considerations of cost yield to considerations of quality and competence. The legislature has determined that these concerns warrant a departure from the strict rule of free competition for public contracts. Cf. Attorney General Opinions JM-881 (1988); JM-712 (1987) (providing that the legislature may vary policy of strict competition by providing exceptions to competitive bidding statute).

We believe that the duties of a construction management consultant as described in your letter qualify as "professional services" for the purposes of section 21.901(c). These duties require a high level of knowledge, experience, and skill consistent with the standards of professionalism described above. See J. Canterbury, Texas Construction Law Manual § 6.10 (1981); Minnesota Vikings Football Club, Inc. v. Metropolitan Council, 289 N.W.2d 426, 441-442 (Minn. 1979) (characterizing construction management services as professional services). See generally, G. Hardie, Construction Contracts and Specifications 34-35 (1981); R. Meyers, The New Contractual Arrangements, in Construction Contracts in the 80's 103-118 (1980). We also note the trend in many states to except contracts for the services of construction managers from competitive bidding requirements as either personal or professional services. See State v. Brown, 422 N.E.2d 1254 (Ind. Ct. App. 1981); Mongiovi v. Doerner, 546 P.2d 1110 (Or. Ct. App. 1976); Ohio Rev. Code Ann. § 307.86 (Baldwin 1985).

In Attorney General Opinion MW-530 (1982) this office concluded that a contract for the services of a construction manager were within the "personal services" exception to the competitive bidding requirement of article 2368a, V.T.C.S. That statute, now chapter 252 of the Local Government Code, excepted contracts for "personal or professional services" from competitive bidding requirements imposed by the statute. The duties of the construction manager were to include representing, advising, and consulting with the county procuring his services, coordinating and overseeing the work of contractors, and making recommendations concerning the payment of contractors. The attorney general determined that because these services involved the personal, intellectual or manual labor of an individual, they constituted "personal services" within the meaning of the statute. It was therefore unnecessary to consider whether such services also constituted "professional

services" for the purposes of the exception to competitive bidding. However, the opinion quoted a passage from <u>Hunter v. Whiteaker & Washington</u>, 230 S.W. 1096 (Tex. Civ. App. - San Antonio 1921, writ ref'd), stating reasons for exempting certain contracts from the competitive bidding process. The same passage was quoted in Attorney General Opinion MW-342 (1981) as the rationale behind the "professional services" exception to section 21.901. Thus, it appears that through identical reasoning construction management services may be characterized either as "personal services" under chapter 252 of the Local Government Code or "professional services" under section 21.901 of the Education Code. <u>See also</u> 64 Am. Jur. 2d <u>Public Works and Contracts</u> § 43 (equating professional services with personal services).

Earlier in this opinion, we observed that your description of the duties of a construction management consultant did not indicate whether the consultant would also serve as the prime contractor or subcontractor on any construction project covered by the consulting contract. We will now discuss the significance of that issue.

Attorney General Opinion JM-282 (1984) concerned the use of construction management contracts by state universities. The facts provided to us stipulated that general contracting firms were invited to submit bids for the construction of a project based on only a general description of the project and were asked to include hourly rates for consulting services in their bids. The consulting services consisted of preliminary work with the designers of the construction project, the preparation of cost estimates for the project, the designation of work to be performed by subcontractors, and the invitation and acceptance of subcontract bids. The construction manager/contractor was allowed to designate the work it would perform, or the university could require it to perform preliminary construction work. At the close of the design phase and preliminary construction phase of the project, the contractor would submit a guaranteed maximum price for the remainder of the project. The university could reject the guaranteed maximum price and pay the contractor only for the consulting services, or it could accept the price and authorize the contractor to proceed with construction.

Section 51.907 of the Education Code provides that contracts for the construction or erection of permanent improvements at institutions of higher education are void unless they are made pursuant to the competitive bidding procedures authorized therein. After drawing a distinction between contracts for construction and contracts for the

planning or design of a construction project, we concluded that work done prior to the time a decision is made about who will perform actual construction consists of professional or consultant services not governed by section 51.907. Contracts for such pre-construction services are governed by either article 664-4, V.T.C.S., or article 6252-11c, V.T.C.S., which concerns the employment of private consultants by state agencies. Neither statute authorizes competitive bidding; the latter, however, requires an agency to publicly invite offers for consulting services if the consulting contract may be valued in excess of $10,000.

The opinion went on to address the issue of authorizing the construction manager to perform construction work on the same project for which it provided pre-construction services without resort to competitive bidding. We answered in the negative, taking note that section 51.907 voids contracts for construction work not let in response to sealed competitive bids. We also sounded the following caution:

> Beyond that, in our opinion, a contractor who has acted as a consultant for a university in the design of a facility, the estimation of its costs, or the preparation of the specifications therefor, is disqualified from bidding on the resulting construction contract. The Texas Supreme Court, in Texas Highway Commission v. Texas Association of Steel Importers, Inc., [372 S.W.2d 525 (Tex. 1963)], adopted the explanation of Texas competitive bidding statutes given in Sterrett v. Bell, [240 S.W.2d 516 (Tex. Civ. App. - Dallas 1951, no writ)], saying the purpose and intent of such statutes were well stated there. In part, the Sterrett court said competitive bidding 'requires that all bidders be placed upon the same plane of equality.' 240 S.W.2d at 520. It also said the purpose of such a statute, among other things, was to 'prevent favoritism,' and '[t]hat there can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, [or] favor a contractor or materialman . . . .' Id.
>
> A potential bidder is undoubtedly put in a favored position over other potential bidders if he drafts the specifications of the job to be let or participates in the design and

> cost-estimating decisions of the owner.   All
> bidders are not placed  on the same plane  of
> equality.  In our opinion, such dual  activi-
> ties create a conflict of intersts as well.

Attorney General Opinion JM-282 (1984) at 8.  We closed  the
opinion by observing that a construction management  consul-
tant was at least within the  spirit, if not the letter,  of
article 6252-9b, V.T.C.S., which announces a policy  forbid-
ding state  officers  or  employees to  hold  any  interest,
financial or  otherwise,  direct  or indirect,  that  is  in
substantial conflict  with  the proper  discharge  of  their
duties.

     We believe similar words of caution are warranted here.
Because  the  construction  management  consultant  will  be
responsible for the preparation or coordination of  informa-
tion necessary to formulate  bid specifications, i.e.,  pro-
ject costs and design requirements,  it will enjoy an  over-
whelming advantage over all other potential bidders for  the
general contract.   Furthermore, since  the consultant  will
manage the  bidding and  negotiation process,  it will  know
what its  competitors' bids  are, thereby  permitting it  to
submit a lower  bid.  We  therefore conclude  that the  con-
struction management  consultant  described in  your  letter
would be disqualified from bidding  on any contract for  the
construction of a project for which it serves as  consultant
to the school district.

### S U M M A R Y

> A contract for the services of a construc-
> tion management consultant  is excepted  from
> competitive bidding by  section 21.907(c)  of
> the Texas Education  Code as  a contract  for
> "professional services."   Contracts for  the
> construction of projects subject to the  con-
> sulting contract  must be  submitted to  com-
> petitive bidding in  accordance with  section
> 21.907.  A  contractor is  disqualified  from
> bidding on a contract for the construction of
> a project for which it serves as construction
> management consultant to a school district.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General