Office of the Attorney General · State of Texas



October 7, 1999

The Honorable Florence Shapiro
Chair, State Affairs Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0124

Re: Whether Texas Department of Transportation may restrict material specifications to products of only one vendor if other vendors have similar products of equal quality, and related questions (RQ-0069-JC)

Dear Senator Shapiro:

As you know, the Texas Department of Transportation ("TxDOT") must competitively bid each contract for the improvement of a state highway or for the materials to be used in the construction or maintenance of a state highway. TEX. TRANSP. CODE ANN. § 223.001 (Vernon 1999). TxDOT may specify the materials that must be used by a vendor in performance of a contract. *Id.* § 223.007. For materials to be used in state highway construction and maintenance contracts, TxDOT has adopted a list of material specifications. *See* TEX. DEP'T OF TRANSP., DEPARTMENTAL MATERIAL SPECIFICATIONS (Dec. 1, 1998).

You ask several questions about TxDOT specifications generally and about one specification in particular:

> 1. Is TxDOT prohibited from restricting material specifications to suit the products of only one vendor if other vendors have similar products of equal quality? If so, does TxDOT materials specification D-9-6240 [now DMS-6240] violate that prohibition?
>
> 2. Can TxDOT include non-functional characteristics to further restrict a material specification?

We conclude that, as a general rule, TxDOT may not restrict a material specification to only one vendor when the material is available from another vendor, and may not include requirements in the specification that are unrelated to the quality or performance of the material. However, we cannot determine whether the particular TxDOT specification about which you ask is unlawfully restrictive, because the determination would require us to decide factual matters that are in dispute.

When a statute requires a government contract to be competitively bid, as a general rule the contract may not include a requirement that restricts competition in bidding. *See Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 526 (Tex. 1963). Competitive bidding requirements reflect the legislative goal of providing the best quality of work and materials at the lowest possible price. *Id.* at 527. "A governmental body therefore may not adopt policies or issue bid solicitations or specifications that restrict competition unless such policies, solicitations, or specifications have a definite and objective relationship to matters of quality and competence or are adopted pursuant to clear legislative authority." Tex. Att'y Gen. Op. No. DM-113 (1992) at 7. The Texas Supreme Court and this office have held that a governmental body may not impose contract requirements that restrict the source of materials in competitive contracts.

In *Texas Highway Commission v. Texas Association of Steel Importers, Inc.*, the Texas Supreme Court considered the validity of a Highway Commission order requiring all materials furnished under commission construction contracts to be manufactured in the United States or its territories and possessions. *Steel Importers*, 372 S.W.2d at 526. "The effect of the order would be to eliminate from the field of bidders upon highway construction contracts all those who owned or intended to acquire foreign materials and use them in carrying out highway construction contracts." *Id.* This reduction in available competitors, the court said, circumvented the purpose of competitive bidding. "'Its purpose is to stimulate competition, prevent favoritism and secure the best work and materials for the best interests and benefit of the taxpayers and property owners. There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project.'" *Id.* at 527 (quoting *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App.–Dallas 1951, no writ)).

The Supreme Court recognized in *Steel Importers* that a governmental agency is not prohibited from specifying the characteristics of the materials it requires for the work to be performed under a contract. But, the court said, these requirements should be couched in terms of the quality specifications of the materials, not in terms of the materials' source:

> No one questions the power and authority of the Commission to specify the physical and chemical standards for construction materials which are to by used in Texas highway construction. If the Commission desires that no rusty steel be used, it may say so. Matters of quality should be fixed by quality specifications and not by proscriptions as to localities of manufacture or fabrication. . . . . Why should not the term "steel, free from rust" be used instead of "domestic steel" if that is the quality that is desired in re-enforcing materials used in highway construction?

*Id.* at 529.

Relying on the principles set out in *Steel Importers*, this office has declared invalid bidding requirements and purchasing policies that restricted the source of the product. For example, opinions have concluded that a county may not award printing jobs only to union printers, *see* Tex. Att'y Gen. Op. Nos. H-1219 (1978) at 2, forbid the purchase of foreign automobiles, MW-139 (1980) at 2, or award a contract solely on the basis that the bidder was a local merchant, H-1086 (1977) at 2. Bidding practices that favor a particular contractor have also been disapproved. This office has said, for example, that a consultant who helped draft contract specifications could not bid on the contract because the consultant would have advantage over other bidders. *See* Tex. Att'y Gen. Op. Nos. JM-940 (1988) at 7, JM-282 (1984) at 8. Also void are contract requirements that are not directly related to the quality of the materials or the work to be performed. Thus, this office has found invalid a policy that rewarded bidders on the basis of bidder's participation in voluntary school programs, compliance with minority and women contracting program, or estimates of economic benefits conferred upon local economy, *see* Tex. Att'y Gen. Op. Nos. DM-113 (1992) at 7, a requirement that independent contractors provide employees with health insurance; JM-1213 (1990) at 1-2, and a requirement that certain percentage of work be performed by contractor's employees, JM-881 (1988) at 3.

Accordingly, we conclude that TxDOT may not restrict material specifications to suit the products of only one vendor if other vendors have similar products of equal quality, and may not include nonfunctional characteristics in a specification. Where materials of the required quality are available from more than one source, a specification that eliminates all but one source defeats the purpose and intent of the competitive bidding requirement and is prohibited. A requirement not related to the quality or performance of the material likewise is contrary to competitive bidding principles.

Whether TxDOT material specification DMS-6240 violates this prohibition, however, cannot be determined by this office.

DMS-6240 is the material specification for "Geogrid for Base/Embankment Reinforcement." *See* TEX. DEP'T OF TRANSP., DEPARTMENTAL MATERIAL SPECIFICATIONS (Dec. 1, 1998). In apparent compliance with *Steel Importers*, the specification describes the characteristics of the material and its required qualities. For example: "The geogrid shall be a synthetic planar structure formed by a regular network of integrally connected polymeric tensile elements with apertures designed to interlock with the surrounding fill material." On its face, DMS-6240 does not name any particular company as the sole source of the material.

However, a TxDOT contractor alleges that the specification is written in such a way that, in fact, only one company is able to comply with it. *See* Memorandum from Dock Griffin, Griffin Industrial Sales, Inc., to Honorable Drew Nixon, Texas State Senate (Mar. 30, 1999). The physical properties of the material are those of only one company's product, the contractor says, and "[t]hese properties include non functional characteristics that serve no purpose from a design and/or construction point." *Id.* We are also told that the specification has resulted in a higher cost for the material since only one company is able to supply it. *Id.*

On the other hand, TxDOT tells us that "it is not true that Specification D-9-6240 [now DMS-6240] suits the products of only one vendor, nor that there are other products that are equal in quality to those called for in the specification; nor is it true that the specification includes non-functional characteristics." Letter from Joanne Wright, Associate General Counsel, Texas Department of Transportation, to Ms. Elizabeth Robinson, Chair, Opinion Committee (June 9, 1999) (on file with Opinion Committee).

Whether TxDOT material specification DMS-6240 is restricted to the products of only one vendor or includes nonfunctional characteristics is ultimately a question of fact that this office cannot decide. However, if the material specification is in fact restrictive in this way, it is in violation of the principles of the competitive bidding statute and is void.

## S U M M A R Y

In competitively bid contracts, TxDOT may not restrict material specifications to suit the products of only one vendor if other vendors have similar products of equal quality or include requirements in the specification that are unrelated to the quality or performance of the material. Whether TxDOT material specification DMS-6240 violates this prohibition is a question of fact that cannot be determined in the opinion process.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee