OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 28, 2002

The Honorable Michael A. Stafford
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002-1700

Opinion No. JC-0521

Re: Whether a county may require prospective contractors to submit affidavits disclosing their business relationships with officers and employees of the county and county entities (RQ-0491-JC)

Dear Mr. Stafford:

You ask whether a county may require prospective contractors to submit affidavits disclosing their business relationships with officers and employees of the county and county entities. We conclude that the County Purchasing Act and the Professional Services Procurement Act authorize a county to impose this condition on prospective contractors.

You explain that the Harris County Commissioners Court is considering adopting an order that would require a business entity or person who wishes to enter into a contract with the county or a county entity to submit a "disclosure statement."[1] The disclosure statement would be in the form of a notarized affidavit in which the prospective contractor would disclose all of the contractor's "business relationships" with officers and employees of the county or other county entity "with [which] the vendor desires to contract."[2]

The proposed order states that it is not the intent of the commissioners court to "preclude any prospective vendor or contractor from employing . . . any public officer or employee" or for such employment to "be considered in the award of any contract except to the extent allowed or required by law." Request Letter, *supra* note 1, Proposed Order at 2. The proposed order also provides that "[n]othing in this order should be construed as disqualifying any entity from receiving a contract because of the employment of an individual properly identified in a Disclosure Statement." *Id.* It also states, however, that the disclosure statements are necessary to ensure that contracts are "awarded based upon proper criteria rather than based upon favoritism or inside information," *id.* at 1, which suggests that information disclosed in the statements would be considered in awarding contracts. The proposed order would also provide that failure to submit a disclosure statement would be grounds for terminating a contract: "[A]greements for which a proper and truthful Disclosure

---

[1] Letter and attachments from Honorable Michael A. Stafford, Harris County Attorney, to Honorable John Cornyn, Texas Attorney General (Jan. 11, 2002) (on file with Opinion Committee) [hereinafter "Request Letter"].

[2] *See id.* and Proposed Order and Affidavit attached thereto.

Statement are required but not presented should be terminable without further cause." *Id.* at 2. Thus, it appears that information in disclosure statements would be considered in awarding contracts and that, in effect, the submission of a disclosure statement would be required of all prospective contractors.

You note that one of the commissioners in your county has pointed out that Local Government Code section 335.107 expressly requires the board of a sports authority to design a "conflict of interest questionnaire that requires disclosure of a vendor's affiliations or business relationships that might cause a conflict of interest" and requires vendors to file completed questionnaires with the board, *see* TEX. LOC. GOV'T CODE ANN. § 335.107(b), (d) (Vernon Supp. 2002), but "no statute expressly authorizes the commissioners court to make such a requirement." Request Letter, *supra* note 1, at 2.

The proposed order indicates that it would apply to the Harris County Flood Control District, the Harris County Hospital District, and "all Local Government Corporations and other entities whose boards are appointed by this court," as well as the county. Request Letter, *supra* note 1, Proposed Order at 1. A number of statutes govern purchasing by counties and county entities, but your request letter and brief refer only to the County Purchasing Act and the Professional Services Procurement Act. Rather than survey all the statutes that might apply to purchasing by the county or a county entity, we limit our analysis to the two statutes briefed in your letter. We address the County Purchasing Act and the Professional Services Procurement Act separately and conclude that both provisions impliedly authorize a commissioners court to require prospective contractors to disclose their business relationships with county officers and employees. We limit our analysis to whether these statutes generally authorize such a requirement; we do not make any conclusions with respect to the specific proposed order and affidavit submitted with your request.

The County Purchasing Act, Local Government Code, chapter 262, subchapter C, generally requires a county to purchase goods and services according to competitive bidding or competitive proposals:

> Before a county may purchase one or more items under a contract that will require an expenditure exceeding $25,000, the commissioners court of the county must comply with the competitive bidding or competitive proposal procedures prescribed by this subchapter . . . .

TEX. LOC. GOV'T CODE ANN. § 262.023(a)[3] (Vernon Supp. 2002); *see also id.* § 262.023(b)[4] ("The competitive bidding and competitive proposal requirements established by Subsection (a) apply to contracts for which payment will be made from current funds or bond funds or through time

---

[3] *Text as amended by* Act of May 27, 2001, 77th Leg., R.S., ch. 1409, § 4, 2001 Tex. Gen. Laws 3619, 3620-21.

[4] *Id.*

warrants. Contracts for which payments will be made through certificates of obligation are governed by The Certificate of Obligation Act of 1971 (Subchapter C, Chapter 271).").

With respect to competitive bidding, the County Purchasing Act requires a county to publish notice of a proposed purchase including specifications about the item to be purchased and other information about the purchase. *See id.* § 262.025. The county must "provide all bidders with the opportunity to bid on the same items on equal terms and have bids judged according to the same standards as set forth in the specifications." *Id.* § 262.0225(a). All bids for an item must be opened at the same time. *See id.* § 262.026(a). After bids for an item have been opened, the officer in charge of opening the bids must present them to the commissioners court. *See id.* § 262.027(a). Section 262.027 requires a commissioners court to award the contract to the lowest responsible bidder, providing in pertinent part:

> (a) . . . . Except as provided by Subsection (e), the court shall:
>
> > (1) award the contract to the responsible bidder who submits the lowest and best bid; or
> >
> > (2) reject all bids and publish a new notice.
>
> (b) If two responsible bidders submit the lowest and best bid, the commissioners court shall decide between the two by drawing lots in a manner prescribed by the county judge.
>
> (c) A contract may not be awarded to a bidder who is not the lowest dollar bidder meeting specifications unless, before the award, each lower bidder is given notice of the proposed award and is given an opportunity to appear before the commissioners court and present evidence concerning the lower bidder's responsibility.

*Id.* § 262.027(a)-(c). Subsections (d) and (e) of section 262.027 provide special criteria for determining the lowest and best bid for a contract for the purchase of certain equipment and materials. In addition, section 262.0275 provides that in determining who is a responsible bidder, the commissioners court may take into account the safety record of the bidder, if:

> (1) the commissioners court has adopted a written definition and criteria for accurately determining the safety record of a bidder;
>
> (2) the governing body has given notice to prospective bidders in the bid specifications that the safety record of a bidder may be considered in determining the responsibility of the bidder; and
>
> (3) the determinations are not arbitrary and capricious.

*Id.* § 262.0275 (Vernon 1999).

Section 262.0295 of the County Purchasing Act provides for a multistep competitive proposal procedure that may be used in certain situations. *See id.* § 262.0295(a). "Quotations must be solicited through a request for proposals." *See id.* § 262.0295(b). "Public notice for the request for proposals must be made in the same manner as provided in the competitive bidding procedure, except that the notice may include a general description of the item to be purchased, instead of the specifications describing the item or a statement of where the specifications may be obtained, and may request the submission of unpriced proposals." *Id.* "The award of the contract shall be made to the responsible offeror whose bid is determined to be the lowest evaluated offer resulting from negotiation." *Id.* § 262.0295(d); *see also id.* § 262.0295(e) ("As provided in the request for proposals and under rules adopted by the commissioners court, discussion may be conducted with responsible offerors who submit priced bids determined to be reasonably susceptible of being selected for award. Offerors must be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals, and revisions may be permitted after submission and before award for the purpose of obtaining best and final offers.").

Section 262.030 provides that certain items may be purchased using a competitive proposal procedure. As with section 262.0295, quotations must be solicited through a request for proposals. Public notice for the request for proposals must be made in the same manner as provided in the competitive bidding procedure. The request for proposals must specify the relative importance of price and other evaluation factors. "The award of the contract shall be made to the responsible offeror whose proposal is determined to be the lowest evaluated offer resulting from negotiation, taking into consideration the relative importance of price and other evaluation factors set forth in the request for proposals." *Id.* § 262.030(b) (Vernon Supp. 2002); *see also id.* § 262.030(e) ("As provided in the request for proposals and under rules adopted by the commissioners court, discussions may be conducted with responsible offerors who submit proposals determined to be reasonably susceptible of being selected for award. Offerors must be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals, and revisions may be permitted after submission and before award for the purpose of obtaining best and final offers."). For purposes of our analysis of the County Purchasing Act, we will use the term "bidders" to refer generally to those who submit competitive bids and those who submit competitive proposals.

The County Purchasing Act does not expressly authorize a county to require bidders to disclose information about their business relationships with county officers and employees. In cases where the County Purchasing Act does not expressly authorize the county to impose a condition on prospective bidders, this office must determine whether the condition is consistent with the Act and, moreover, whether authority to impose the condition may be necessarily implied from statutory authority.

The purpose of the County Purchasing Act's competitive procedures is to enable the county to obtain the "lowest and best" bid or, in the case of competitive proposals, the "lowest evaluated offer" from a "responsible offeror." *See* TEX. LOC. GOV'T CODE ANN. §§ 262.027(a)(1) (Vernon Supp. 2002), .0295(d) (Vernon 1999), .030(b) (Vernon Supp. 2002). As courts have noted, the rationale underlying competitive bidding is that a governmental entity that obtains bids from

competitors who have equal access to information about the project will secure the best work at the lowest practicable price:

> [Competitive bidding] requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. Its purpose is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners. There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project.

*Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 527 (Tex.1963) (citing *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App.–1951 no writ)). Construing competitive bidding requirements in light of this purpose, courts have held that a governmental body may not adopt policies or issue bid solicitations or specifications that restrict competition unless such policies, solicitations, or specifications have a definite and objective relationship to matters of quality and competence or are adopted pursuant to clear legislative authority. *See* Tex. Att'y Gen. Op. Nos. DM-113 (1992) at 7; JM-712 (1987).

Requiring bidders to submit information about their business relationships with county officers and employees imposes a burden on bidders, but it does not appear to restrict competition. Indeed, the requirement would appear to foster competition by reducing the likelihood that contracts will be awarded due to favoritism or access to inside information, thus leveling the playing field and encouraging prospective bidders to submit bids. To the extent the requirement does restrict competition, we conclude that it has an objective relationship to "matters of quality and competence" because the information will assist the county in identifying instances in which a bidder's business relationships may have given the bidder an advantage in preparing the bid, which may in turn be relevant to the bidder's ability to perform.

It is not enough, however, that a county's competitive purchasing policy is consistent with the policies underlying competitive bidding. Given counties' limited jurisdiction, a purchasing policy must also be expressly or impliedly authorized by statute. *See* Tex. Att'y Gen. Op. No. JC-319 (2000) at 3-4. Authority may be implied from a statute if it is reasonably necessary to carry out a county's express duties. *See Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941) ("Where a right is conferred or obligation imposed on [a commissioners court], it has implied authority to exercise a broad discretion to accomplish the purposes intended.").

In Attorney General Opinion JM-1215, for example, this office considered whether Harris County was authorized to prescribe a prevailing wage for nonpublic works contracts awarded under the County Purchasing Act. As this office noted, "[c]ounties may do only those things that they are authorized to do, either expressly or by necessary implication." Tex. Att'y Gen. Op. No. JM-1215 (1990) at 2 (citing *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Anderson v. Wood*, 152 S.W.2d 1084 (Tex. 1941); *Childress County v. State*, 92 S.W.2d 1011, 1016 (Tex. 1936)); *see also* Tex. Atty. Gen. Op. No. JC-0171 (2000) at 1 ("It is well settled that the authority of the commissioners court to contract [o]n behalf of the county is limited to that conferred either expressly or by necessary implication by the constitution and laws of this state."). This office concluded that Harris County was not authorized to prescribe a prevailing wage: "While the legislature has required that counties determine and pay local prevailing wage rates on public works contracts, it has made no such requirement in regard to other contracts. . . . [C]hapter 262 does not require the payment of prevailing wages generally. Nor do we find any other statute that expressly requires or necessarily implies that the commissioners court establish prevailing wage rates for contracts other than public works contracts." Tex. Att'y Gen. Op. No. JM-1215 (1990) at 2. And, in Attorney General Opinion JC-0319, we concluded that a county was not authorized to require prospective bidders to attend mandatory prebid conferences. The County Purchasing Act did not expressly authorize the bidding requirement and the requirement could not be necessarily implied because the county could convey information about a project to potential bidders in writing. *See* Tex. Att'y Gen. Op. No. JC-0319 (2000) at 3. Furthermore, the legislature had expressly authorized other limited-power entities to require such conferences. *See id.* at 4.

Here, the County Purchasing Act does not expressly authorize a county to require bidders to submit disclosure statements regarding their business relationships with county officers or employees. However, as we explain below, we believe that such authority may be necessarily implied from the County Purchasing Act, because a bidder's business relationships with county officers or employees may be related to the bidder's ability to perform and requiring bidders to disclose this information is a reasonable method to obtain it. Given that we conclude that this authority may be necessarily implied from the County Purchasing Act, we do not believe it is dispositive that the legislature has expressly required the board of a sports authority to obtain this information. *See* Tex. Loc. Gov't Code Ann. § 335.107(b)-(c) (Vernon Supp. 2002) (requiring the board of a sports authority to design a "conflict of interest questionnaire that requires disclosure of a vendor's affiliations or business relationships that might cause a conflict of interest" and requiring vendors to file completed questionnaires with the board). The legislature's decision to mandate the board of a sports authority to obtain such information does not indicate that the authority to obtain such information may never be implied.

Again, the Act requires a county to select the lowest and best bid or, in the case of competitive proposals, the "lowest evaluated offer" from a "responsible offeror." *See id.* §§ 262.027 (Vernon Supp. 2002), .0295(d) (Vernon 1999), .030(b) (Vernon Supp. 2002). A contract may not be awarded to a bidder who is not the lowest bidder, unless the lower bidders are given an opportunity to present evidence regarding their "responsibility." *See id.* § 262.027(c) (Vernon Supp. 2002). Section 262.0275 of the County Purchasing Act authorizes a commissioners court to take

into account the safety record of a bidder in determining who is a responsible bidder, *see id.* § 262.0275 (Vernon 1999), but this provision does not limit a commissioners court from considering other criteria. As this office has noted, the County Purchasing Act precludes a commissioners court from limiting competition, but it need not accept a bid merely because it is the lowest. "The statute only requires that the county accept the lowest and best bid proffered." Tex. Att'y Gen. Op. No. JM-881 (1988) at 3. Thus, if county commissioners "have an objective reason, supportable by facts fairly known to them, that a particular bidder cannot perform responsibly because of some objective impediment, they may consider rejecting that bid, and the rejection would not be an abuse of discretion." *Id.* at 4 (citing *Corbin v. Collin County Comm'rs Court*, 651 S.W.2d 55 (Tex. App.–Dallas 1983, no writ)).

A bidder's business relationships with county officers and employees may be relevant to the bidder's ability to perform, and, in certain circumstances, a commissioners court could reasonably decide to reject a bid on the basis that the bidder's business relationship with a county officer or employee affects the bidder's ability to perform responsibly. *See id.* Where the authority exists for a commissioners court to reject a bid on the basis of certain information, we believe that a commissioners court is necessarily authorized to obtain that information.

We are not aware of any other means for a county to effectively obtain information about prospective contractors' business relationships with county officers and employees other than by requiring prospective contractors to provide it. Chapter 171 of the Local Government Code requires a county official with an interest in a county contract to disclose the interest and to abstain from voting on the matter, *see* TEX. LOC. GOV'T CODE ANN. §§ 171.001(a) (Vernon 1999) (definition of "local public official"), .004 (affidavit and abstention from voting), but it applies only if the county official has a "substantial interest" in the affected business entity, *see id.* §§ 171.002 (definition of "substantial interest"), .004, and it does not apply to county employees, *see id.* § 171.001(a) (definition of "local public official"). Furthermore, section 159.033 of the Local Government Code permits a commissioners court in a county with a population of 125,000 or more to "adopt by order a financial disclosure reporting system for county officers, precinct officers, county judicial officers, candidates for those offices, and county employees." *Id.* § 159.033. It is not apparent to us, however, that such a reporting system would necessarily enable a county to ascertain whether a particular contract is awarded on a competitive basis or to assess a particular bidder's ability to perform.

Next, we consider whether requiring prospective contractors to submit a disclosure statement is permitted in the procurement of professional services. We conclude that it is.

The Professional Services Procurement Act forbids a "governmental entity" to competitively bid a contract for "professional services," which is defined to include services such as accounting, architecture and landscape architecture, land surveying, professional engineering, and real-estate appraising. *See* TEX. GOV'T CODE ANN. §§ 2254.002(2)(A) (Vernon 2000) (defining "professional services"), .003(a) (forbidding competitive bidding for professional services); *see also* Tex. Att'y Gen. LO-96-117, at 1 (noting that contract for professional services may not be competitively bid).

For purposes of the Professional Services Procurement Act, "governmental entity" includes a county. *See id.* § 2254.002(1)(B). Generally, a governmental entity must award a contract for professional services "on the basis of demonstrated competence and qualifications to perform the services . . . for a fair and reasonable price." *Id.* § 2254.003(a). With respect to a contract for the professional services of an architect, professional engineer, or land surveyor, a county must:

> (1) first select the most highly qualified provider of those services on the basis of demonstrated competence and qualifications; and

> (2) then attempt to negotiate with that provider a contract at a fair and reasonable price.

*Id.* § 2254.004(a). A professional-services contract entered in contravention of the Professional Services Procurement Act is "void as against public policy." *Id.* § 2254.005.

We conclude that requiring a provider of professional services who wishes to contract with the county to submit a disclosure statement is consistent with the Professional Services Procurement Act and that county authority to impose such a requirement may be implied from the Act. First, the purpose of the Act is to prohibit a governmental entity from obtaining professional services by competitive bidding and to ensure that professionals are selected on the basis of their "demonstrated competence and qualifications to perform the services." *Id.* §§ 2254.003, .004. Requiring professionals who wish to enter into a contract with a county to disclose their business relationships with county officers and employees is consistent with both of these statutory goals. Furthermore, the Act's requirement that professionals be selected on the basis of their "demonstrated competence and qualifications to perform the services" for "a fair and reasonable price," *id.*, necessarily implies the authority to assess a professional's competence and qualifications and the fairness and reasonableness of the offering price. A professional's business relationships with county officers and employees may be relevant to assessing the professional's competence and qualifications to perform services for the county and to the fairness and reasonableness of the offering price. Where the authority exists for a commissioners court to select a professional on the basis of certain criteria, we believe that a commissioners court is necessarily authorized to obtain information that is relevant to that criteria.

You also ask whether the county may impose the disclosure-statement requirement "where the contract to be awarded is not required to be bid or to be awarded under the Professional Services Procurement Act." Request Letter, *supra* note 1, at 1. We assume this question is intended to address purchasing in situations in which the County Purchasing Act and Professional Services Procurement Act do not apply. County authority must be expressly provided by statute or necessarily implied from statutory powers. The authority to require prospective contractors to disclose information about their business relationships must be expressly authorized or necessarily implied from a statute. When other statutory provisions govern purchasing, the county's authority to require the disclosure statement will depend upon the applicable law. Our conclusion here is limited to county purchasing under the County Purchasing Act and the Professional Services Procurement Act, the two provisions raised and briefed in your letter.

## S U M M A R Y

Under the County Purchasing Act and the Professional Services Procurement Act, a county is authorized to require prospective contractors to submit disclosure statements regarding their business relationships with county officers and employees.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee