# NO. 12-16-00041-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TXU ENERGY RETAIL COMPANY LLC,*<br>*APPELLANT* | § | *APPEAL FROM THE 116TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *FORT BEND INDEPENDENT SCHOOL DISTRICT,*<br>*APPELLEE* | § | *DALLAS COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

TXU Energy Retail Company sued Fort Bend Independent School District for breach of contract. The trial court granted the District's plea to the jurisdiction and motion for summary judgment. In one issue, TXU challenges the trial court's rulings. We affirm.

### BACKGROUND

In 2010, the District issued a request for qualification (RFQ) to secure an electricity provider for a two-year competitive procurement period to end on May 31, 2013. The RFQ sought bids for both a one-year and a two-year term: June 2011 through June 2012 and June 2011 through June 2013. As a result of this competitive bidding process, the District and TXU entered into an electricity supply contract in May 2010. The contract's one-year primary term spanned from June 1, 2011, through May 31, 2012. The contract contained a provision that gave TXU the unilateral option of extending the contract for another year, to June 1, 2013, provided that TXU gave the District at least ninety days written notice before the end of the primary term of its intent to exercise the option. The contract also contained a "blend and extend" provision. TXU began supplying electricity in June 2011.

Early into the 2010 contract's primary term, the parties began discussing a new contract utilizing the "blend and extend" provision. In September 2011, the parties entered a second contract with a primary term of June 1, 2012, through May 31, 2014. This contract gave TXU a unilateral option to extend the contract for another year to June 1, 2015. The contract also contained a "supercession" clause, which stated that it superseded the contract "dated 05/26/2010 for sales occurring at the Premise(s) on or after the commencement of the Primary Term hereof for each such Premise(s)."

On January 30, 2013, the District notified TXU that the second contract was void because it exceeded the "period of time for which approval was authorized[.]" The District explained that it believed the purchase of electricity from TXU under the second contract, and beyond June 2013, violated statutory competitive bidding requirements. Subsequently, the District issued a new RFQ to solicit bids for electricity. During this bidding process, TXU continued providing electricity to the District at the rate specified in the second contract. TXU participated in the new bidding process, but the District chose to enter into a contract with a provider other than TXU. On July 31, 2013, TXU discontinued providing electricity to the District.

During the time period that TXU provided electricity under both contracts, it sent the District periodic invoices, which the District timely paid. On December 23, 2013, TXU sent the District a final invoice in the amount of $3,169,046.38. This invoice was based on a recalculation of electricity charges from the beginning of the second contract and in accordance with a provision in the 2010 contract that authorized TXU to charge for electricity at a standard list price offer (SLO) rate for power consumed after the termination of the 2010 contract. When the District refused to pay this invoice, TXU sued the District for anticipatory breach of the second contract and promissory estoppel. The District filed a plea to the jurisdiction and motion for summary judgment, after which TXU amended its petition to add a breach of contract allegation based on section 4.3 of the 2010 contract.

The trial court granted the District's plea to the jurisdiction and motion for summary judgment and ordered that TXU's claims be dismissed, with prejudice, except for the section 4.3 claim. TXU appealed, and the Dallas Court of Appeals affirmed the trial court's ruling. *See generally **TXU Energy Retail Co., L.L.C. v. Fort Bend Indep. Sch. Dist.**, 472 S.W.3d 462 (Tex. App.—Dallas 2015, no pet.). The District then filed a second plea to the jurisdiction and motion

for summary judgment regarding the section 4.3 claim. The trial court granted both in November 2015 and dismissed TXU's section 4.3 claim with prejudice. This appeal followed.

<h2 style="text-align:center">PLEA TO THE JURISDICTION</h2>

In its sole issue, TXU challenges the trial court's decision to grant the District's plea to the jurisdiction and motion for summary judgment. In its first subissue, TXU maintains that the trial court erred by granting the plea to the jurisdiction because the District's governmental immunity has been waived. According to TXU, section 4.3 of the 2010 contract obligated the District to continue paying for any electricity consumed after the 2010 contract's expiration date. Although the record indicates that the District paid TXU's invoices for electricity used after May 31, 2012, TXU argues that section 4.3 authorized it to charge the District at a higher rate than the rate that was invoiced. Accordingly, TXU seeks the difference between the amount charged and that which it contends should have been charged under section 4.3.

**Standard of Review**

Whether a trial court has subject matter jurisdiction is a legal question that we review de novo. ***Tex. Dept. of Parks & Wildlife v. Miranda***, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we must determine if the petition alleges facts that affirmatively demonstrate jurisdiction. ***Id***. at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. ***Id***. If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction, but the defects are not incurable, the issue is one of pleading sufficiency and the plaintiff should be allowed to amend the pleadings. ***Id***. at 226-27.

If the pleadings affirmatively negate jurisdiction, the plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. ***Id***. at 227. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. ***Id***. If the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. ***Id***. at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. ***Id***.

## Applicable Law

A local governmental entity, including a school district, that is authorized by statute or the constitution to enter into a contract, and that enters into a contract, waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to certain terms and conditions. TEX. LOC. GOV'T CODE ANN. §§ 271.151(3)(B), 271.152 (West 2016). The statute applies to a "written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]" *Id*. § 271.151(2)(A). A school district contract for the purchase of goods and services valued at $50,000 or more in the aggregate for each twelve month period shall be made by the method that provides the best value for the district, including competitive bidding. TEX. EDUC. CODE ANN. § 44.031(a)(1) (West Supp. 2016). "Compliance with competitive bidding statutes is mandatory, and if the requirements of the law are not met, the contract is void." *TXU Energy Retail Co., L.L.C.*, 472 S.W.3d at 466.

## Analysis

In the present case, the parties do not dispute that the 2010 contract was competitively bid. TXU argues that, after the 2010 contract's primary term ended, the District's continued use of power triggered section 4.3 of the contract, which states as follows:

> If, upon expiration or termination of an Agreement for any reason, Buyer fails either to switch to another retail electric provider or execute a replacement agreement with Seller, then, until Buyer either executes a replacement agreement with Seller or switches to another provider for the applicable Premise(s), Seller may charge Buyer, as the Contract Price for Power utilized at such Premises after expiration or termination of the Agreement, a price per kWh equivalent to Seller's then current "standard list price offer." Provided further, however, in the event that after such termination or expiration Buyer shall fail to make payment due to Seller or provide security after notice and opportunity to pay/provide, Seller, in its sole discretion and at whatever time chosen by Seller, may (as a result of [the Public Utility Commission of Texas] rules that forbid a [Retail Electric Provider] from switching a customer to the [Provider of Last Resort]) direct the [Transmission and/or Distribution Provider ("TDSP")] to disconnect electric service to the Premise(s) under such Agreement, except as may be prohibited by law; however, Seller shall not have the right to direct the TDSP to disconnect electric service for the non-payment of amounts that are subject to a bona fide dispute.

TXU contends that section 4.3 authorized it to recalculate amounts that had already been invoiced and paid at the rate specified in the second contract, and to charge the District in accordance with the SLO rate for electricity used after May 31, 2012. The District argues that TXU was not authorized to recalculate the charges under section 4.3 and that, even if TXU was

so authorized, governmental immunity bars it from being sued under any provision of the 2010 contract because that contract was not valid after May 31, 2012.

The Dallas Court of Appeals previously determined that the 2011 contract is void. In its opinion, the court recognized that the 2010 contract was competitively bid. *Id.* at 466. TXU argued that, because the 2010 contract was competitively bid, any extension made pursuant to the contract's "blend and extend" provision was necessarily competitively bid. *Id*. The court disagreed and explained its reasoning as follows:

> [T]he dispositive issue is whether the 2011 agreement negotiated pursuant to a blend and extend provision is valid and enforceable when it *clearly exceeds the contract term period applicable to the original competitive procurement period*.
>
> Taking TXU's argument to its logical extreme, the blend and extend provision would permit the parties to extend their agreement for a duration many multiples of the two-year maximum contract period in the bid information, such as for fifty years. Such a result would circumvent the purpose of the competitive bidding statute. We conclude that *section 44.031(a) does not authorize the 2011 agreement because it extends the contract term beyond that identified in the 2010 competitive procurement period*. Compliance with competitive bidding statutes is mandatory, and if the requirements of the law are not met, the contract is void.

*Id*. (emphasis added). The court also rejected TXU's contention that "an implied contract between TXU and the District exists such that the District has waived governmental immunity through its conduct." *Id*. at 466-67. The court explained that the Texas Supreme Court and other appellate courts had declined to "recognize a waiver-by-conduct exception in breach of contract suits against governmental entities." *Id*. at 467.

As the transferee appellate court, we are required to decide this case in accordance with the Dallas court's previous opinion. *See* TEX. R. APP. P. 41.3. Although the validity of section 4.3 was not before the Dallas court, our sister court's opinion provides guidance with respect to our analysis of that provision as it applies to the relief that TXU is now seeking. Given the Dallas court's holding that the second contract is void, TXU now seeks to use section 4.3 to revive and extend the 2010 contract after its primary term ended on May 31, 2012. Whether section 4.3 does so requires us to first examine whether that section could impermissibly allow the parties to extend the 2010 contract beyond the competitively procured period.

A school district's contract cannot exceed the contractual term applicable to the original competitive procurement period. *See* **TXU Energy Retail Co., L.L.C.**, 472 S.W.3d at 466. Like the "blend and extend" provision, section 4.3 could potentially allow the parties to extend the

contract beyond the RFQ's two-year procurement period. *See id.* There is no final contract termination date in section 4.3. The only limitation on the time for which the District would be obligated to purchase electricity under the SLO rate is when the District executes a replacement agreement with TXU or switches to another provider. Accordingly, it is conceivable that TXU could provide electricity under the SLO rate for an indefinite period of time under section 4.3.

As was the case with the "blend and extend" provision, section 4.3 cannot be used to extend the contract term beyond that identified in the 2010 competitive procurement period. *See id.* A contrary holding would be inconsistent with the purpose of competitive bidding requirements, i.e., to "stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners." *Tex. Highway Comm'n v. Tex. Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 527 (Tex. 1963) (quoting *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. App.—Dallas 1951, no pet.)); *see TXU Energy Retail Co., L.L.C.*, 472 S.W.3d at 466.

Moreover, a governmental entity is immune from suit as to any claim that is not based on a valid contract. TEX. LOC. GOV'T CODE ANN. §§ 271.151-.152. A governmental entity can waive governmental immunity only if there is a written contact. *Id.* TXU argues that, because the second contract was declared void, the 2010 contract was never legally superseded, replaced, or nullified by the second contact and, consequently, remained in full force and effect. TXU correctly states that a void contract is a mere nullity. *See Watts v. Pilgrim's Pride Corp.*, No. 12-04-00082-CV, 2005 WL 2404111, at *3 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op.). However, we disagree with TXU's position that voidance of the second contract in any way affected the date on which the 2010 contract terminated.

Even if section 4.3 authorized TXU to charge the SLO rate after termination of the 2010 contract's primary term, TXU could sue the District to recover the difference between the SLO rate and the rate actually charged only if the 2010 contract remained valid after May 31, 2012. But it did not. In clear and unambiguous language, the 2010 contract provides that its primary term spanned from June 1, 2011, to May 31, 2012. In equally clear and unambiguous language, TXU had the unilateral option to extend the contract for another year. TXU was required to give the District at least ninety days written notice of its intent to exercise the option before the end of the primary term. The record does not indicate that TXU ever sent such a notice, and TXU does not dispute that the 2010 contract ended on May 31, 2012. Because TXU chose not to exercise

its unilateral option to extend the contract for a second year, the 2010 contract terminated on May 31, 2012, before the period for which TXU seeks to re-bill.

As set forth in the Dallas court's opinion, two years was the longest possible term for which the District could enter into a contract per the RFQ's procurement period. Although the parties sought to replace the 2010 contract with a second contract for a longer term, the second contract violated competitive bidding statutes and was declared void. The legal effect of this voidance is that from June 1, 2012 through July 31, 2013, the parties were not operating under a valid written contract. Absent a valid written contract, the District could not waive governmental immunity and it is immune from suit. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151-.152.

Under the circumstances of this case, we conclude that the trial court did not err by granting the District's plea to the jurisdiction. *See id*. § 271.152. For this reason, we need not address TXU's summary judgment challenge. *See* TEX. R. APP. 47.1. We overrule TXU's sole issue.[1]

### DISPOSITION

Having overruled TXU's sole issue, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered October 31, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[1] Because we have determined that the 2010 contract terminated on May 31, 2012, and was not valid for purposes of waiving governmental immunity, we do not address whether section 4.3 (1) violated the District's RFQ requiring fixed pricing, and (2) is void for failure to include a material term when the SLO rate was not specified. *See* TEX. R. APP. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2016**

**NO. 12-16-00041-CV**

**TXU ENERGY RETAIL COMPANY LLC,**
Appellant
V.
**FORT BEND INDEPENDENT SCHOOL DISTRICT,**
Appellee

Appeal from the 116th District Court

of Dallas County, Texas (Tr.Ct.No. DC-13-14961)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **TXU ENERGY RETAIL COMPANY LLC,** for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*